**Laura Ellen WALTERS, Administratrix for the Estate of Thomas Thorpe, Deceased,**
**and**
**Jean McNatt, Administratrix for the Estate of Elna McNatt Thorpe, Deceased, Plaintiffs,**

**v.**

**Robert Lee DUNLAP, Stanley S. Grimm, and the Midwest Emery Freight Systems, Inc., an Illinois corporation, Defendants,**

**and**

**All-State Insurance Company, Skokie, Illinois, and Security Mutual Casualty Company, Chicago, Illinois, Garnishees.**

**Misc. No. 3714; Civ. No. 63–423.**

United States District Court
W. D. Pennsylvania.

Jan. 27, 1966.

Thomas P. Ruane, Jr., Uniontown, Pa., for plaintiffs.

Philip Baskin, of Baskin, Boreman, Sachs & Craig, Pittsburgh, Pa., for Security Mut. Cas. Co.

William Walker, of Dickie, McCamey & Chilcote, Pittsburgh, Pa., for All-State Ins. Co.

MARSH, District Judge.

This litigation is concerned with the respective obligations of two insurance companies under their automobile liability insurance policies. The problem arises from a jury trial at which the following facts were established.

On or about December 20, 1962, Midwest Emery Freight Systems, Inc. (Midwest) leased a tractor-trailer (truck) from Stanley. S. Grimm, together with a driver, Robert Lee Dunlap, who was a regular employee of Grimm. This vehicle was used by Midwest, an interstate trucker, under its Interstate Commerce Commission (I.C.C.) certificate to transport salt solely for its own customers from points in Ohio to consignees at points in Pennsylvania. As the result of a collision in Pennsylvania between the truck and an automobile, the plaintiffs' decedents were killed. The defendants in the suit were Midwest, Grimm and Dunlap.

At the trial, the parties stipulated the damages to be $80,000. The jury found specially that Grimm had orally leased the truck to Midwest for this one trip; that both Midwest and Grimm had the right to control and direct the driver Dunlap at the time and place of the accident; and that Dunlap's negligence was the proximate cause of the accident. Accordingly, judgments totaling $80,000 were entered in favor of the plaintiffs against Dunlap, Grimm, and Midwest, jointly and severally, and judgments were entered in favor of Midwest on its cross-claim against Dunlap for indemnity.[1]

The insurers involved are Illinois corporations: Security Mutual Casualty Company (Security) for Midwest and All-State Insurance Company (All-State) for Grimm.[2]

The plaintiffs issued execution on their judgments and named the insurers, Security and All-State, garnishees. The bodily injury coverage in each policy is $100,000/$300,000. After plaintiffs' interrogatories were answered by each garnishee, the plaintiffs filed motions for summary judgment against each garnishee. Security moved for summary judgment against All-State.

The plaintiffs contend that the insurance carriers are liable to pay the judgments pro rata. Each carrier contends that the other is liable for the whole amount of the judgments; All-State urging that Security, the insurer of Midwest, has primary coverage and is liable for the entire amount of the judgment; and Security arguing that All-State was the sole insurer of Dunlap and Grimm on the fatal trip and is liable for the entire amount. In our opinion, Security is liable for the judgments in their entirety and plaintiffs' motion for summary judgment against Security should be granted.[3]

As we interpret identical endorsements attached to each policy entitled "Receipts Basis—Truckmen", bodily injury liabil-

1. Grimm did not file a cross-claim against Dunlap.

2. The decedents, Pennsylvania citizens, were killed in Pennsylvania on an authorized I.C.C. route of Midwest. The plaintiffs as well as the garnishees have ignored the conflict of laws question, if any. It is not known where the policies which are the foundation of this proceeding were countersigned; nor is there any suggestion as to what law is applicable. However, we see no problem which depends upon differences in possible choices of law, and since this is a diversity case, Pennsylvania law should be applied so far as it is applicable. Automotive Devices Co. v. Automotive Devices Co. of Pa., 292 F.2d 663, 664 (3d Cir. 1961); Baltimore and Ohio R. Co. v. Alpha Portland Cement Co., 218 F.2d 207, 211 (3d Cir. 1955); cf. 8 P.L.E. Contracts § 122, p. 141. See: Goulding v. Sands, 237 F.Supp. 577 (W. D.Pa.1965); Restatement (Second), Conflict of Laws § 346i(2), Illustration 7 (Tent. Draft No. 6, 1960).

3. Security's motion for summary judgment against All-State should be denied.

ity coverage for the accident was furnished to Dunlap and Grimm by each policy.[4, 5]

Security, however, vigorously contends that under § 1(a) (1) of the endorsement quoted in f. n. 4, supra, Dunlap was not covered as an employee [6] of Midwest since the accident did not occur "while such automobile * * * [was] being used exclusively in the business of the named insured [Midwest] and over a route the named insured * * * [was] authorized to serve by federal or public authority * * * ".

We disagree with this contention. There is no dispute that the truck carried a cargo of salt over Midwest's authorized route from points in Ohio to points in Pennsylvania. The shipments were arranged by Midwest with the shippers

of the salt. In our opinion, the transportation of the salt in the truck was "exclusively" Midwest's "business". Since Midwest was a carrier certificated by the I.C.C. to transport cargo interstate, that transportation was its exclusive business. In this instance, Grimm's business was leasing a truck and driver to Midwest; his business did not extend to transporting cargo interstate. Grimm, not having an I.C.C. permit, could not legally have undertaken that type of transportation business. As found by the jury, Dunlap, the driver on the fatal trip, was engaged in the work of operating the leased truck for Midwest, as well as the work of operating the truck for Grimm, but we think Dunlap was driving "exclusively in the business" of Midwest within the meaning of Security's policy.

4. The pertinent provisions are:
"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Automobile Medical Payments applies with respect to all owned and hired automobiles of the commercial type, subject to the following provisions:
"1. *Definition of Insured.* As respects such insurance, Insuring Agreement 'Definition of Insured' is replaced by the following:
With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:
"(a) except with respect to an employee of the named insured, to any person or organization, or to any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others (1) unless the accident occurs while such automobile is being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, or * * *; provided, however, a driver or other person furnished to the named insured

with an automobile hired by the named insured shall not be deemed an employee of the named insured;
" * * *
"(d) with respect to any hired automobile, to the owner or any lessee of such automobile, or to any agent or employee of such owner or lessee, if the accident occurs (1) while such automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, or * * *.
"2. *Exclusions.* This endorsement does not apply:
"(a) to any private passenger automobile; * * *."

5. Security's policy, in addition, contains an endorsement entitled "Truckmen—Specialized Carriers" which we think is not applicable because no specialized equipment was involved in transporting the salt cargo.

6. The jury found that at the time and place of the accident, Midwest had the right to control and direct Dunlap which imposes on Midwest the legal consequences of a master to respond in damages for the negligence of its servant or employee. Security's policy expressly covers Midwest's employees. But even if it were held that Dunlap was not an employee of Midwest within the meaning of § 1(a) (1), we think he was insured as a "person" while using a hired automobile exclusively in the business of Midwest and over an authorized route.

If Security's contention is correct, i. e., that the transportation·of the salt cargo was Dunlap's business and Grimm's business, as well as Midwest's, and therefore not exclusively Midwest's, then there could never be any situation under the policy whereby Midwest would be insured by its policy for accidents involving a leased truck and driver in interstate transportation, whereas the language of the self-same exception inferentially indicates otherwise. We do not believe that the construction urged by Security was intended in regard to its named insured, Midwest, a certificated interstate carrier.[7]

On the contrary, since Midwest's status as a certificated carrier made it liable as a matter of law for the negligence of a driver of a commercially leased truck operated under Midwest's I.C.C. certificate,[8] in our opinion it was definitely intended that Security's policy, of necessity, would provide coverage for Midwest in this situation. See: 49 U. S.C.A. § 315; 49 C.F.R. § 174.1.

In addition, if an ambiguity exists in the language of the phrase "exclusively in the business of the named insured", we think, in accord with the accepted rule of construction, that the language should be construed strictly against the insurer and in favor of providing coverage for Security's named insured, the certificated carrier, Midwest.

We conclude, then, that since the accident occurred while the truck was on the exclusive business of Midwest, the driver Dunlap and the lessor Grimm are "insureds" under "1. *Definition of Insured.* (a) (1)" of Security's "Receipts Basis— Truckmen" endorsement.

Finally, the aforesaid endorsement in each policy contained the following identical provision:

"7. *Other Insurance.* If the insured has other insurance against a loss covered by this policy the company shall not be·liable for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, with respect to any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, the insurance shall be excess insurance over any other valid and collectible insurance."

In determining the respective liabilities of insurance coverage in cases of overlapping coverage, it seems that under Pennsylvania law the decision must rest upon a construction of language employed by the respective insurers and not upon any so-called primary tort-feasor doctrine or upon any arbitrary rule or circumstance.

In Grasberger v. Liebert & Obert, 335 Pa. 491, 6 A.2d 925, 122 A.L.R. 1201 (1939), the Supreme Court of Pennsylvania rested its decision upon the construction of the language employed in the policies involved. In that case the scope of the one policy was only as to the excess. The scope of the other policy was for the full liability. The "principle" of the *Grasberger* case does not depend upon any theory of "contingent coverage" or

---

**7.** The operative facts here are unlike those in Carolina Cas. Ins. Co. v. Pennsylvania T. & F. Mut. Cas. Ins. Co., 327 F.2d 324 (3d Cir. 1964), where the owner of the truck did not lease same, but was transporting goods for Kuhns as well as his own goods in the same truck. Since the transportation was not exclusively in the business of Kuhns, it was held that his policy did not provide coverage. We think

Security's reliance on this case is misplaced.

**8.** Magenau v. Aetna Freight Lines, 360 U.S. 273, 79 S.Ct. 1184, 3 L.Ed.2d 1224 (1959); Rosu v. Law, 193 F.2d 894, 899 (3d Cir. 1952); Kissell v. Motor Age Transit Lines, 357 Pa. 204, 209, 53 A.2d 593, 597 (1947); Kimble v. Wilson, 352 Pa. 275, 281–282, 42 A.2d 526 (1945); Felbrant v. Able, 80 N.J.Super. 587, 194 A.2d 491 (1963).

"primary insurer", but upon the clear words of the policy.[9] See: Speier v. Ayling, 158 Pa.Super. 404, 45 A.2d 385, 388 (1946).

Thus construing the language in the "Other Insurance" provision, we think that the excess clause in All-State's endorsement is effective; but that the excess clause in Security's identical endorsement obviously is not applicable for Midwest had not "leased or loaned" an "automobile of the commercial type * * * to any person or organization, other than the named insured [Midwest], engaged in the business of transporting property by automobile for others * * *."

We hold in accordance with what seems to be the general rule that where the excess clause, as contained in All-State's endorsement, and the pro-rata clause, as contained in Security's identical endorsement, are concurrently effective, the pro-rata clause is disregarded and full effect is given to the excess clause. Compare the dictum in Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 147 A.2d 529, 533, 69 A.L.R.2d 1115 (1959), and the cases and articles there cited; and also the principles and discussions contained in Grasberger v. Liebert & Obert, supra; Speier v. Ayling, supra; McFarland v. Chicago Exp., 200 F.2d 5 (7th Cir. 1952); and Burcham v. Farmers Insurance Exchange, 255 Iowa 69, 121 N.W.2d 500 (1963).

The fact that All-State has not filed cross-motions for summary judgment against the plaintiffs does not preclude the entry of such summary judgments in its favor. Boeing Co. v. International U., United A., A. & A. I. Wkrs., 231 F.Supp. 930 (E.D.Pa.1964), aff'd 349 F.2d 412 (3d Cir. 1965); American Auto. Ins. Co. v. Indemnity Ins. Co., 108 F. Supp. 221 (E.D.Pa.1952), aff'd 228 F.2d 622 (3d Cir. 1956); 6 Moore, Federal Practice, ¶ 56.12 (2d ed. 1953).

An appropriate order will be entered.

9. The tests for determining which policy is primary and which is secondary seem to be varied and irreconcilable. Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 147 A.2d 529, 532, 69 A.L.R.2d 1115 (1959).