INSTITUTE FOR SHIPBOARD
EDUCATION, Plaintiff,

v.

CIGNA WORLDWIDE INSURANCE,
Defendant.

No. 90 Civ. 3709(RJW).

United States District Court,
S.D. New York.

May 4, 1993.

Terence Gargan, Elizabeth A. McCoy, Hill, Betts & Nash, New York City, for plaintiff.

Donald J. Cayea, Bradford Cooke, Levitan, Frieland & Cayea, New York City, for defendant.

ROBERT J. WARD, District Judge.

Plaintiff Institute for Shipboard Education ("ISE") has moved, pursuant to Rule 56,

Fed.R.Civ.P., for summary judgment in the above-captioned action. Defendant Cigna Worldwide Insurance ("Cigna") has cross-moved for summary judgment. For the reasons that follow, plaintiff's motion is granted and defendant's cross-motion is denied.

## BACKGROUND

This action arises from a dispute between two insurers concerning the extent to which each had a contractual duty to indemnify and defend in connection with an underlying negligence action which has now been settled.

### The Underlying Lawsuit

The underlying lawsuit involved a wrongful death claim by the parents and estate of Michael Keith Burgbacher ("Burgbacher"), who died of an allergic reaction to medication that he was required to take as a condition of his employment aboard the S.S. Universe ("the vessel"). That suit was brought against, *inter alios*, ISE, Seawise Foundation ("Seawise"), and Ernest Ainslee, M.D. ("Ainslee"). ISE administered an educational program known as the Semester at Sea. Seawise, owner of the vessel, entered into a written agreement with ISE to provide the vessel to ISE during the spring 1984 Semester at Sea program.

At all relevant times, ISE and Seawise concurrently employed Ainslee, under separate written contracts, to provide medical services aboard the vessel. ISE had also entered into a written agreement with Burgbacher, dated November 16, 1983, stipulating that he was to fill the position of Resident Director on the vessel from January 10, 1984 through April 23, 1984, in exchange for room and board and a "transportation allowance" of $500. The itinerary planned by ISE during this time period included countries known to present malaria risks. Accordingly, ISE required all students and staff to take the anti-malarial drugs chloroquine and Fansidar. Burgbacher became ill during the voyage as a result of an allergic reaction to Fansidar, which the medical staff of the vessel failed to diagnose and properly treat. On March 14, 1984, Burgbacher died of Stevens–Johnson syndrome in Colombo, Sri Lanka.

Burgbacher's parents and his estate filed a complaint in the United States District Court for the Western District of Pennsylvania, in which they alleged that the negligence of ISE, Seawise and Ainslee was the proximate cause of Burgbacher's death.

The complaint contained both common-law claims and federal claims under the Jones Act, 46 U.S.C.App. § 688 the Death on the High Seas Act, 46 U.S.C.App. § 761 *et seq.,* and general maritime law. In particular, Burgbacher's parents and his estate claimed that these defendants were negligent in employing an incompetent physician, providing the decedent with medicine which caused illness, failing to warn of the risks of the medication, failing to monitor the medication, failing to diagnose the illness and failing to provide the decedent with a safe place to work. ISE, Seawise and Ainslee moved for summary judgment on the grounds that: (1) plaintiffs' exclusive remedy lay under the workers' compensation laws of California; (2) Burgbacher was not a seaman and thus the Jones Act was inapplicable; (3) a survival action, if applicable, would need to be brought under general maritime law and not the law of Pennsylvania; and (4) Burgbacher's father was a non-dependent parent and should be dismissed as a plaintiff.

On April 18, 1988, Judge Ziegler granted summary judgment for ISE, Seawise and Ainslee on the Jones Act claims. Insofar as the only claims against Seawise arose under the Jones Act, Seawise was dismissed from the action. ISE, Ainslee, and Burgbacher's parents and the estate thereupon entered into settlement negotiations and, on May 17, 1989, Burgbacher's parents and the estate signed a receipt and release in exchange for a $1.2 million payment ("the Burgbacher settlement").

### The Relevant Insurance Coverage and the Instant Action

Both ISE and Seawise had policies of insurance covering the Semester at Sea voyage and its participants. Seawise maintained protection and indemnity insurance with Steamship Mutual Underwriting Association

(Bermuda) Limited ("the P & I Club"),[1] which also covered ISE as an additional insured by endorsement. ISE obtained separate insurance policies through the American Foreign Insurance Agency ("AFIA")[2] for (i) general liability coverage, (ii) workers' compensation and employers' liability insurance, and (iii) umbrella liability. ISE seeks to recover from Cigna for the Burgbacher settlement under the workers' compensation and employers' liability policy.

Rule 24 of the protection and indemnity insurance policy maintained by Seawise and ISE through the P & I Club ("the P & I Club policy") covered, *inter alia,*

> [d]amages or compensation for loss of life of or personal injury to or illness of
>
> i. any person . . . including hospital, medical or funeral expenses for which the Member may in consequence be liable, arising out of the negligent navigation . . . or other negligent act or omission on board of or in relation to the entered ship. . . .

Exhibits to Parties' Cross–Motion[s] for Summary Judgment (hereinafter "Exhibits to Cross–Motions"), Ex. 14 at 26. The relevant ISE policy with Cigna, Standard Workmen's Compensation and Employers' Liability Policy WC003991 ("the Cigna policy"), contained two types of coverage. Under Coverage A, Cigna agreed

> to pay voluntarily on behalf of the insured, to the employees defined in section 1 of this endorsement, the compensation, medical and other benefits specified in the workmen's compensation law and occupational disease law of the state designated in item 3 of the declarations in the same manner as if such employees were covered under the provisions of said law or laws.

*Id.,* Ex. 19 at Endorsement No. 1, § 2.A. In "COVERAGE B—EMPLOYER'S LIABILITY" of the endorsement ("Coverage B"), Cigna agreed

> [t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by accident or disease, including death at any time resulting therefrom, sustained by an employee as defined in section 1 of this endorsement and arising out of and in the course of his employment in operations connected with his assignment to a country or countries stated in item 1 of the declarations.

*Id.,* Ex. 19 at Endorsement No. 1, § 3.A.

Each relevant policy covering ISE included a provision setting forth the order and amount that would be paid if other insurance covered the claim. Rule 20 of the P & I Club policy stated that:

> [i]f a Member is, apart from the protection or indemnity of the Club, insured, protected or indemnified in any manner whatsoever against any of the liabilities, costs or expenses enumerated in Rules 24 or 25, no contribution shall be made by the Club to such liability, costs or expenses, on the basis of double insurance or otherwise, to the extent to which he is so insured or protected or indemnified. Nevertheless, with the approval of the Directors, a Member may be protected or indemnified by special agreement with the Club made either directly with himself or with other Insurers upon the terms that certain liabilities, costs or expenses shall be borne by the Club notwithstanding such other insurance, protection or indemnity.

*Id.,* Ex. 14 at 25.

The Cigna policy also limited coverage in its "other insurance" clause:

> [i]f the insured has other insurance against a loss covered by this policy, the company shall not be liable to the insured hereunder for a greater proportion of such loss than the amount which would have been payable under this policy, had no other such insurance existed, bears to the sum of said amount and the amounts which would have

---

1. The P & I Club is a mutual association of shipowners formed for the purpose of providing protection and indemnity for their entered ships.

2. AFIA was an international insurance underwriting association providing property, liability, marine, accident, health, surety and life insurance to customers in approximately 130 countries. Cigna purchased AFIA from the other owners for $193 million in cash in December of 1983.

been payable under each other policy applicable to such loss, had each such policy been the only policy so applicable.

*Id.*, Ex. 19 at 3, ¶ 11.

Both insurers involved in the instant litigation were notified of the underlying Burgbacher action upon its commencement. Cigna had paid Burgbacher's father, prior to initiation of the underlying litigation, $1500 for Burgbacher's funeral expenses and $5000 for shipment of his body back to the United States, pursuant to Coverage A of the Cigna policy. Cigna did not participate in the underlying trial or settlement negotiations, even though it had been invited to do so on two occasions by ISE's counsel, Hill, Betts & Nash. In addition, Cigna, while never formally declining to participate in the defense or settlement of the claim, did not contribute to the defense or settlement costs. The P & I Club assumed the defense on behalf of all defendants in the underlying action and advanced $1.2 million for the settlement and $172,741.38 for defense costs.

ISE commenced this action on May 30, 1990 on behalf of the P & I Club for contribution by Cigna to the settlement and defense costs.

## DISCUSSION

### A. Standards for Granting Summary Judgment

■ Summary judgment may be granted when the moving party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Rosen v. Thornburgh*, 928 F.2d 528, 532 (2d Cir.1991). If no rational fact-finder could find in the nonmovant's favor, there is no genuine issue of material fact, and summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). In making this determination, the court should not resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, must assess whether material factual issues remain for the trier of fact. *Western World Ins. Co. v. Stack Oil, Inc.*,

922 F.2d 118, 121 (2d Cir.1990) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

■ When a summary judgment motion, such as those presently before this Court, involves the construction of contractual language, the parties' "intent is all [and] the language used must be examined first to see if it is ambiguous." *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990). A court may grant the motion "only where the language *and* the inferences to be drawn from it are unambiguous." *Id.* (emphasis in original). Thus, a motion for summary judgment must be denied if the intent of the contracting parties is subject to more than one reasonable interpretation.

Insofar as the instant action is concerned, the parties have indicated, in a joint status report to the Court, their belief that "the matter can be decided upon the stipulation of facts and memoranda of law." Letter from Bradford Cooke to the Honorable Robert J. Ward (Apr. 16, 1992).

### B. Choice of Law

Because this is a diversity action in a federal court in New York, the Court should apply New York choice of law rules when deciding which substantive insurance and contract law is applicable in the instant action. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Griffin v. McCoach*, 313 U.S. 498, 503, 61 S.Ct. 1023, 1025, 85 L.Ed. 1481 (1941). The parties agree, and the Court concurs, that, under New York choice of law rules, this Court should apply California law when determining the scope of coverage under the insurance policies and Pennsylvania law when determining the priority of these policies.

### C. Cigna's Duty to Indemnify

This Court must make two distinct inquiries to resolve the issue of Cigna's liability for the Burgbacher settlement. Thus, the first inquiry concerns whether Cigna's policy, when read as a whole but viewed in isolation from other insurance policies held by ISE,

covers the Burgbacher claim. If the Court answers this question in the affirmative, it must then ascertain how that policy stands in relation to the P & I Club policy held by ISE.

### 1. *Coverage Under the Cigna Policy*

The parties agree that ISE was covered by the P & I 'Club's policy for the Burgbacher settlement. Thus, the first issue to be decided by this Court is whether the Cigna policy should be interpreted, under California law, as also indemnifying ISE for this settlement.

ISE claims that, under the terms of Coverage B of the Cigna policy, Cigna had a duty to indemnify ISE for the Burgbacher settlement, while Cigna asserts that its policy does not cover ISE for the Burgbacher settlement.

Cigna first contends that Coverage B of the Cigna policy does not apply because it covers only land locations. In support of its position, Cigna points to the geographical limitation contained within the Cigna policy:

EMPLOYEES COVERED:

A. It is agreed that the insurance provided by this policy applies only to those employees of the insured who are hired or assigned by him to work at *locations within the country or countries* stated in item 1 of the declarations.

Exhibits to Cross–Motions, Ex. 19 at Endorsement No. 1, § 1.A (emphasis added). Cigna bolsters its contention by claiming that this interpretation is consistent with the way the Semester at Sea program was operated, inasmuch as the P & I Club insurance provided coverage for events occurring at sea and Cigna covered incidents transpiring in port.

 The Court does not accept Cigna's argument. First, "[a] cardinal rule[ ] of insurance law [is that] an exception to the

coverage provided for in general terms must be clearly and unmistakably expressed." *Pleasant Valley Lima Bean Growers and Warehouse Assoc. v. Cal–Farm Ins. Co.*, 142 Cal.App.2d 126, 298 P.2d 109, 114 (1956) (citing *Pendell v. Westland Life Ins. Co.*, 95 Cal.App.2d 766, 214 P.2d 392 (1950)). The Cigna policy does not specifically exclude coverage while the ship is at sea. If Cigna intended to exclude occurrences at sea, it could have expressly stated that exclusion in the policy.

Furthermore, the damages sustained by Burgbacher arose from the negligence of ISE's medical personnel in diagnosing and treating his allergic reaction to the anti-malarial drugs required "in the course of his employment in operations *connected with* his assignment to a country or countries stated in item 1 of the declarations." Exhibits to Cross–Motions, Ex. 19 at Endorsement No. 1, § 3.A. (emphasis added).[3]

Finally, even if the policy excluded occurrences at sea, the negligence of ISE employees occurred on land as well as at sea, so that the Burgbacher suit would fall within the coverage of the Cigna policy. Much of the medical staff's treatment of Burgbacher occurred while the ship was docked in Kenya and Sri Lanka, two countries not listed as exclusions in Endorsement No. 2.[4]

 The Cigna policy covered more than workers' compensation claims. In analyzing an insurance policy containing a provision similar to Coverage B of Cigna's policy, the California Supreme Court noted with approval the trial court's finding that

employers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a "gap filler," providing protection to the employer in those situations where the employee has a right to bring a tort

---

3. Item 1 of the declarations states that coverage is "Worldwide as per Endt. # 2". *Id.* Endorsement No. 2, in turn, provides that coverage includes
 all usual workplaces of the Insured at or from which operations covered by this policy are conducted, are located worldwide, excluding [17 countries are listed].
 *Id.* at Endorsement No. 2.

4. The ship was docked in Kenya from February 22 to February 28. Burgbacher was treated by Nurse Rumsey on February 22 and 24 and by Dr. Ainslee and Nurse Smith on February 28. He was misdiagnosed on each occasion. Additionally, Dr. Ainslie continued to treat Burgbacher when the ship docked at Sri Lanka and until he was admitted to the hospital.

action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law.

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 226 Cal.Rptr. 558, 565, 718 P.2d 920, 927 (Cal.1986). Cigna "does not argue that there is any appreciable difference between the Sentry Insurance policy analyzed [in *Producers Dairy* ] and the Cigna Workmen's Compensation Employer's Liability Policy (No. WC003991) at issue herein." Defendant's Reply Memorandum at 6 n. 1. The settlement between Burgbacher's parents and his estate, ISE and Ainslee was predicated on a finding by Judge Ziegler that the remedies available to Burgbacher's estate and his parents in that action were *not* limited to the workers' compensation laws of California. *Burgbacher v. University of Pittsburgh*, No. 85–1633, slip op. at 4 (W.D.Pa. Apr. 18, 1988). Coverage B was therefore a "gap-filler" of the sort analyzed by the court in *Producers Dairy*. Accordingly, this Court finds that, under the terms of the Cigna policy, ISE was covered for the Burgbacher settlement.

### 2. *The Relationship Between the Cigna and the P & I Club Policies*

Having determined. that ISE was covered by the Cigna policy, this Court must now ascertain how the Cigna policy stands in relation to any other insurance policies held by ISE which covered the Burgbacher settlement. The parties agree that Pennsylvania law governs this issue.

Under Pennsylvania law,

Double or other insurance exists where there are two or more insurance policies covering the same interest, the same subject matter and against the same risk. *Blue Anchor Overall Co. v. Pa. Lumbermens Mutual Ins. Co.*, 385 Pa. 394, 398, 123 A.2d 413, 415 (1956). If there is double or other insurance the other insurance clauses are given effect.

There is no double insurance, and hence no apportionment among insurers, if there are specific and general policies covering the damaged property. *Sloat v. Royal Ins. Co*, 49 Pa. 14 (1865). The specific policy

must first pay in full, and if it is not sufficient to cover the loss, the general policy pays the difference up to the amount of the policy. *Blue Anchor Overall Co. v. Pa. Lumbermens Mutual Ins. Co.*, 385 Pa. at 399, 123 A.2d at 416.

*Liberty Mut. Ins. Co. v. Home Ins. Co.*, 583 F.Supp. 849, 852 (W.D.Pa.1984).

Cigna claims that its policy provides general coverage while the P & I Club's policy provides specific coverage and that the P & I Club should therefore be required to pay in full before Cigna must pay. In particular, Cigna interprets the P & I Club policy as insuring specifically against negligence aboard the S.S. Universe, while interpreting the Cigna policy as applying generally to injuries arising out of the scope of employment within the geographical limits of the policy.

This Court rejects Cigna's argument that the P & I Club policy was specific and the Cigna policy general merely because the P & I Club insured the relatively small physical area aboard the vessel while Cigna insured a larger area. The fact pattern in *Liberty Mutual* was similar to the instant matter, in that it involved multiple insurers disputing the priority of coverage. One of the policies at issue in *Liberty Mutual* covered defective fabric and the other covered losses generally, a situation analogous to the present case, where the P & I Club policy covered risks aboard the S.S. Universe and the Cigna policy covered injuries generally arising out of the scope of employment. Although Liberty Mutual urged the court in that case to "conclude there is no identity of risk where the Home policy covered loss from defective fabric and the Liberty Mutual policy covered losses generally," the court rejected that argument and found double insurance. *Liberty Mut. Ins. Co. v. Home Ins. Co.*, 583 F.Supp. at 854. Similarly, this Court finds that double, or other, insurance existed in the instant case, because each policy covered the same interest and subject matter and insured against the same risk.

Both policies covered the same interest, namely ISE's interest in maintaining the economic viability of the Semester at Sea program in the face of potential lawsuits. Inas-

much as this Court has determined that the P & I Club policy and the Cigna policy both covered the Burgbacher settlement, both policies covered the same risk, namely the risk of a wrongful death lawsuit or settlement on behalf of an ISE employee. Finally, both policies covered the same subject matter: the personnel hired by the Semester at Sea program during the spring 1984 voyage.

The Cigna policy and the P & I Club policy therefore constitute double insurance, and Cigna, as well as the P & I Club, must contribute to the Burgbacher settlement.

When an insured has more than one policy covering a claim, the rights and obligations of each insurer depend upon the other insurance clauses of the policies.

> [T]here are three general types of "other insurance" clauses—excess, pro rata, and escape. Excess insurance "kicks in" to provide additional coverage once the policy limits of other available insurance are exhausted. Pro rata provisions allocate financial responsibility between concurrent policies based upon the percentage of coverage each policy bears to the net amount of coverage under all applicable policies. An escape clause attempts to release the insurer from all liability to the insured if other coverage is available.

*Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d 163, 166 (3d Cir.1987) (citing *Insurance Co. of N. Am. v. Continental Casualty Co.,* 575 F.2d 1070, 1072 (3d Cir.1978) (applying Pennsylvania law)).

Neither party contends that its policy was not in effect for the time period when the acts resulting in Burgbacher's death occurred. Furthermore, the parties agree that the Cigna policy contained a pro rata other insurance clause.

ISE claims that the other insurance clause of the P & I Club's policy is an excess insurance clause. Because "the general rule [seems to be] that where the excess clause ... and the pro-rata clause ... are concurrently effective, the pro-rata clause is disregarded and full effect is give to the excess clause," *Walters v. Dunlap,* 250 F.Supp. 76, 81 (W.D.Pa.), *aff'd sub nom, Walter v. Dunlap,* 368 F.2d 118 (3d Cir.1966), ISE asserts

that the Cigna coverage was primary to the P & I Club coverage.

Cigna contends that the P & I Club's other insurance clause is an escape clause. In support of this proposition, Cigna cites to *Contrans* where that court wrote, "[u]nder Pennsylvania law, an 'escape' clause is one that provides that 'the company invoking it is relieved from *any* obligation to the insured if other coverage is available.'" *Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d 163, 166 (3d Cir.1987) (emphasis in original) (citing *Insurance Co. of N. Am. v. Continental Casualty Co.,* 575 F.2d 1070 (applying Pennsylvania law)).

■ The question for this Court is whether the P & I Club's other insurance clause serves as an escape clause or an excess clause. The P & I Club's other insurance clause is found in the first sentence of Rule 20:

> If a Member is, apart from the protection or indemnity of the Club, insured, protected or indemnified in any manner whatsoever against any of the liabilities, costs or expenses enumerated in [the sections defining the scope of liability], no contribution shall be made by the Club to such liability, costs or expenses, on the basis of double insurance or otherwise, *to the extent* to which he is so insured or protected or indemnified.

Exhibits to Cross–Motions, Ex. 14 at 25 (emphasis added). Rule 20 clearly anticipates the possibility of other insurance.

Cigna's reliance on *Contrans* is misplaced. In that case, the Third Circuit indicated that "[g]iven the rigor with which Pennsylvania law treats escape clauses, *we must be careful not to label a limiting clause as an escape clause unless it truly provides a complete escape from liability to the insured.*" *Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d at 166 (emphasis added).

With this principle in mind, the Court finds Rule 20 to be an excess clause. In particular, inclusion of the words "to the extent" in Rule 20 indicates that Rule 20 was not intended to provide "a complete escape from liability to the insured." *Id.* The words "to the extent" are words of limitation, not total escape.

Cigna next contends that ISE has no claim against it, inasmuch as settlement of the Burgbacher action acted as a waiver of the other insurance clause contained in the first sentence of Rule 20. In support of this contention, Cigna points to the second sentence of Rule 20, which provides:

Nevertheless, with the approval of the Directors, a Member may be protected or indemnified by special agreement with the Club made either directly with himself or with other Insurers upon the terms that certain liabilities, costs or expenses shall be borne by the Club notwithstanding such other insurance, protection or indemnity.

Exhibits to Cross–Motions, Ex. 14 at 25.

The Court does not find this argument convincing. Cigna has not presented any evidence that the Directors of the P & I Club ever made a *special agreement ... either directly with* [a Member] *or with other Insurers*" to bear the full cost of the Burgbacher claim or to invoke this clause of Rule 20. Indeed, the evidence before this Court is that the P & I Club tried to involve Cigna in the underlying litigation at least twice. *Id.*, Ex. 12.

■ The Cigna policy contains a pro rata other insurance clause and the P & I Club policy contains an excess clause. Where two policies cover a given loss and one contains an excess clause while the other has a pro rata clause, the pro rata insurer is considered primary, obligated to pay to the full limits of its policy, and the excess insurer is obligated to pay only after the primary insurance is exhausted. *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 768 (3d Cir.1985) (citing *Walters v. Dunlap,* 250 F.Supp. at 81). Accordingly, Cigna's coverage is primary to the P & I Club coverage.

D. Did the P & I Club Properly Preserve Its Claim for Contribution Against Cigna? [5]

Cigna first contends that it is not liable for the Burgbacher claim because ISE voluntari-

ly paid the settlement without negotiating an agreement with Cigna adjusting their mutual responsibility. Cigna next argues that ISE has failed to demonstrate a proper basis for its claim for contribution because "all prior correspondence to Cigna referred to the CGL Policy, No. L04–1572 [the general liability policy], as the basis for the P & I Club's request for contribution." Defendant's Reply Memorandum at 4.

The Court finds Cigna's first contention to be groundless. Recently, the California Court of Appeals considered "the narrow issue of whether an insurer may rely on a clause in its insurance policy (the so-called 'other insurance' clause) to escape liability for damages ... merely because a second insurer in fact paid such damages as part of a settlement on behalf of the insured." *Pines of La Jolla Homeowners Assoc, v. Industrial Indem.,* 5 Cal.App.4th 714, 7 Cal. Rptr.2d 53, 54 (1992).

In essence, I.I. argues that Fireman's Fund's settlement is an admission that Firemen's Fund's policy covered all of the claims, even those [for which it may not have been liable]. We reject I.I.'s argument because an insurer who has potential liability in the underlying lawsuit is entitled to settle any claim alleged against it without prejudice to its right to seek equitable subrogation or indemnity from other insurers alleged to have full or partial liability for the underlying claim. Where an insurer settles in good faith prior to a judicial determination of coverage, such insurer is not a mere volunteer and is entitled to pursue recovery (by way of claims for subrogation or indemnity) of amounts it paid which were in fact covered by the nonsettling insurer.

*Id.* at 59–60 (citations omitted).

■ Inasmuch as there was no prior judicial determination of coverage and the P & I Club settled the Burgbacher litigation with-

---

**5.** The parties have not specifically addressed the choice of law issue concerning preservation of the claim for contribution, defense costs, or the reasonableness of the settlement. Given that each of these questions concerns the scope of the Cigna policy and given that the parties have agreed that scope of policy issues are to be determined under California law, this Court will decide these issues in accordance with California law.

out conceding it was the sole or primary insurer for the Burgbacher claim, this Court finds that, under California law, ISE cannot be held to have waived its right to seek equitable subrogation or indemnity from other insurers for the Burgbacher claim.

ISE has also preserved its right to subrogation or indemnity against Cigna. A letter written by Hill, Betts and Nash, the P & I Club's attorneys, to the Insurance Company of North America, Cigna's predecessor, on March 7, 1989 stated:

> [w]ithout prejudice to any rights of any of the defendants or their insurers in this action, we wish to focus the issue of funding any settlement that might be reached with the plaintiffs in this case. There were two policies in effect which appear to provide coverage for the within claim. There is the vessel's P & I policy with The Steamship Mutual Underwriting Association (Bermuda) Limited and the AFIA policy number L 04–1572, which contains a comprehensive general liability coverage endorsement.

Exhibits to Cross–Motions, Ex. 12, pp. 9–10 (emphasis added) ("the March 7, 1989 letter"). The attorneys clearly reserved the rights of all involved parties. They did not claim that policy L 04–1572 was the only Cigna policy which covered the Burgbacher settlement. Rather, the words "which appear" denote an impression formed at the time, not a claim against Cigna. Further, Cigna provides this Court with no authority that, absent the March 7, 1989 statement, ISE would be estopped from seeking indemnity under another Cigna policy.

Accordingly, the P & I Club preserved its claim for contribution against Cigna.

### E. Defense Costs

■ A claim need only assert a cause of action against an insured which potentially seeks damages within the coverage of the policy to trigger an insurer's duty to defend. *Gulf Ins. Co. v. L.A. Effects Group, Inc.*, 827 F.2d 574, 576 (9th Cir.1987) (applying Cali-

fornia law). The Burgbacher claim asserted bodily injury and death to an ISE employee arising out of the negligence of ISE and its employees which was within the coverage afforded by the Cigna policy. Thus, the Burgbacher claim triggered a duty on the part of Cigna to defend.

■ Where two insurance policies cover a loss and the other insurance clauses operate to make one policy primary and the other excess, the primary insurer "alone owes a duty to provide and bear all costs of the defense...." *Diamond Heights Homeowners Assn. v. National Am. Ins. Co.*, 227 Cal.App.3d 563, 277 Cal.Rptr. 906, 913 (1991). Therefore, Cigna, as the primary insurer, is liable for defense costs of the suit.

### F. Was the Burgbacher Settlement Reasonable?

■ An insurer who wrongfully fails to defend a lawsuit against its insured is liable for any reasonable good faith settlement made by the insured. *Cathay Mortuary (Wah Sang) Inc. v. United Pacific Ins. Co.*, 582 F.Supp. 650, 660 (N.D.Cal.1984) (applying California law). Cigna did not defend ISE against the Burgbacher suit as it was required to do. Cigna is therefore liable for any reasonable settlement entered into by ISE.

■ A settlement is reasonable when "in the light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer." *Samson v. Transamerica Ins. Co.*, 30 Cal.3d 220, 178 Cal. Rptr. 343, 357, 636 P.2d 32, 46 (1981) (citing *Johansen v. California State Auto. Assn. Inter–Ins. Bureau*, 15 Cal.3d 9, 123 Cal.Rptr. 288, 538 P.2d 744 (1975)).

■ This Court finds that the Burgbacher settlement was reasonable. Burgbacher's allergic reaction to the medication he was required to take resulted in his death at age 26. Moreover, he suffered substantially during the weeks prior to his death.[6] There was

---

**6.** The medical notes of Dr. A.T. Navaratnam state, in pertinent part:

On 1.3.84 ... the facial skin had started peeling.... On 3.3.84 ... the facial skin was peeling, the tongue was swollen and he had

little doubt that ISE would be found negligent in causing Burgbacher's death; even the medical experts who were potential witnesses for ISE in the underlying action could not support Ainslee's treatment of Burgbacher. The March 7, 1989 letter at 6–7. Furthermore, "Judge Ziegler informed defendants' counsel during settlement discussions that a jury verdict of $3 million would not be unreasonable or unexpected and that he would not overturn such a verdict as excessive." Affidavit of Terence Gargan at ¶ 90.

Cigna now attacks the settlement, claiming that calculations of Burgbacher's earning power were not adequately supported by a wage history, nor reduced to account for present value, personal consumption, nor income taxes. These contentions are not sufficient to defeat ISE's motion for summary judgment. Even when this Court draws all reasonable inferences against ISE and considers Cigna's claim that the calculation of Burgbacher's earning power should have been reduced, a settlement of less than half of the award expected by ISE's attorneys if the litigation had proceeded to a trial was reasonable.

### G. Can ISE Sue Cigna on the P & I Club's Behalf?

■ In its reply brief, Cigna contends that ISE is not a real party in interest under Federal Rule of Civil Procedure 17(a), which states:

Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by ... the real party in interest; and such ratification ... shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed.R.Civ.P. 17(a). ISE thereafter filed an Affidavit of Ratification obtained from the P & I Club on August 28, 1992, so that it could proceed with this action. It is not necessary to substitute the P & I Club as plaintiff because the P & I Club agrees to be bound by the decision of this Court. *Prosperity Realty, Inc. v. Haco–Canon v. Copeland Corp. v. American Standard Inc.*, 724 F.Supp. 254, 258 (S.D.N.Y.1989); *B.R.I. Coverage Corp. v. Air Canada*, 725 F.Supp. 133, 136–37 (E.D.N.Y.1989).

■ Cigna also claims that ISE may not maintain this action because Condition 10 of the Cigna policy requires "either [a] judgment against the insured after actual trial or [ ] written agreement of the insured, the claimant, and [Cigna]." Exhibits to Cross–Motions, Ex. 19.

The Court rejects this argument. The instant matter is similar to the fact pattern in *Peterson v. Allstate Ins. Co.*, 164 Cal.App.2d 517, 330 P.2d 843 (1958), where an insured informed its insurer of an incident that the insured believed the insurer had a duty to defend. The insurer refused to defend the suit. The California Court of Appeals ruled that "[b]y [the insurer's] breach, [the insured] was thereby placed on her own and compelled to protect herself as best she could. The company having breached its agreement, [the insured] was entitled to proceed in whatever manner seemed to her to be proper under the circumstances." *Id.* at 847. Furthermore, " '[t]he denial of liability on the part of the insuring company and its refusal to defend the suits constituted such a breach of the contract that the insured was released from his obligation to leave the management

---

difficulty in talking.... On 5.3.84 Michael has a purulent discharge from the eyes, ulcers in the mouth, [and] itching swollen hands.... He was admitted [to the hospital at Sri Lanka] on 6.3.84.... He had a ... rash all over the face, body and limbs with peeling of the skin from the major portion of the scalp and face. The skin was showing signs of peeling from the limbs and back of chest.... The skin of the groin and scrotum were raw, red and peeling.... He had an extremely sore, ulcerated mouth, with a raw, red peeling tongue....

There was slow deterioration inspite [sic] of vigorous treatment with progressive liver dysfunction, ... progressive renal failure and severe desquamation of the skin in the limbs, body, face and scalp leaving very extensive raw bleeding surfaces....

[H]e became unconscious late on 13.3.84 and died the same day.

Exhibits to Cross–Motions, Ex. 6.

thereof to it, and was justified in proceeding to defend on his own account.' " *Id.* (quoting *Lamb v. Belt Casualty Co.*, 3 Cal.App.2d 624, 40 P.2d 311, 314 (1935)). Cigna has, in effect, waived Condition 10 by its failure to defend ISE. This Court holds that ISE may sue on the P & I Club's behalf under Rule 17(a), Fed.R.Civ.P., inasmuch as the P & I Club has ratified the action and agreed to be bound by this Court's decision. In addition, this Court holds that ISE is not required to comply with Condition 10 of the Cigna policy because Cigna has waived this provision by its failure to defend ISE.

## CONCLUSION

In summary: (1) ISE was covered for the Burgbacher settlement under Coverage B of the Cigna policy; (2) Cigna and the P & I Club provided double insurance for the Burgbacher claim; (3) the Cigna policy was primary; (4) ISE properly preserved its claim against Cigna; (5) Cigna was responsible for defense costs; (6) the settlement entered into by ISE was reasonable; and (7) ISE may maintain this suit against Cigna. For these reasons, the Court grants plaintiff's motion for summary judgment and denies defendant's cross-motion for summary judgment.

Settle judgment on notice.