602 A.2d 904

**AMERICAN CASUALTY COMPANY OF READING, PA., Petitioner,**

v.

**PHICO INSURANCE COMPANY and Commonwealth of Pennsylvania, Medical Professional Liability Catastrophe Loss Fund et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1991.

Decided Jan. 24, 1992.

K. Charles Gudenas, for petitioner.

David E. Sandel, Jr., for respondent, Phico Ins. Co. and Sharon DiRienzo.

Peter J. Hoffman, for respondents, Com. of Pa. and Medical Professional Liability Catastrophe Loss Fund et al.

Before PALLADINO and McGINLEY, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

Presently before this Court, in our original jurisdiction, is the motion of Phico Insurance Company (Phico) for summary judgment and the cross-motion of American Casualty Company of Reading, Pa. (American Casualty) for summary judgment and also the application of the Pennsylvania Medical Professional Liability Catastrophe Loss Fund (Cat Fund) for summary relief and the cross-application of American Casualty for summary relief.

American Casualty issued to Sharon DiRienzo (DiRienzo), a delivery room nurse, a "Professional Nurse's Liability Policy" (American Casualty's policy) for the period from February 6, 1987, through February 6, 1988. American Casualty's policy provides professional and personal liability coverage for the nursing profession.[1] In its policy American Casualty agrees to "pay all amounts up to the limits of liability [$1,000,000] which you [DiRienzo] become legally obligated to pay as a result of injury or damage." American Casualty's policy, Appendix to Memorandum of Law of American Casualty (Appendix), Exhibit C at 5. American Casualty's policy also provides that "[t]he injury or damage must be caused by ... a medical incident as a result of the supplying of or failure to supply professional services by you...." American Casualty's policy, Appendix, Exhibit C at 5. DiRienzo paid an annual premium of $58.00 in consideration for the insurance coverage.

Phico issued two policies of insurance to Bryn Mawr Hospital (Hospital), one a "Health Care Providers Comprehensive Liability Policy" (primary policy), and the other a "Health Care Providers Umbrella Policy" (excess policy), for the period from November 20, 1987, through January 20, 1988. The policies were extended by endorsement to February 1, 1988. Phico's primary policy provides a wide

---

**1.** The personal liability coverage of the policy is not at issue in the present controversy.

range of liability insurance coverage. Coverage C, "Institutional Professional Liability", includes up to $200,000 of coverage to the Hospital and its employes for "any act or omissions in the furnishing of professional health care services." Phico's primary policy, Appendix, Exhibit D at 11. Phico's excess policy provides up to $10,000,000 of coverage to the Hospital and its employes for "any act or omission during the policy period in the furnishing of professional health care services including the furnishing of ... medication ... in connection with such services...." Phico's excess policy, Section VII–Definitions, Appendix, Exhibit E at 8. Phico's excess policy involves coverage "in excess of the greater of ... any other underlying insurance payable with respect to or collectible by the insured...." Phico's excess policy, Appendix, Exhibit E at 9.

By statute the Cat Fund provides the following coverage: There is hereby created a contingency fund for the purpose of paying all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund as a consequence of any claim for professional liability brought against such health care provider as a defendant ... to the extent such health care providers' share exceeds his basic coverage insurance....

Section 701(d) of the Health Care Services Malpractice Act (Act).[2] "The limit of liability of the fund shall be $1,000,000 for each occurrence for each health care provider and $3,000,000 per annual aggregate for each health care provider." Section 701(d) of the Act, 40 P.S. § 1301.701(d).

On November 28, 1989, American Casualty filed a petition seeking a declaratory judgment "[i]nterpreting the priorities of the insurance policies issued by the parties" as a result of an underlying civil action filed in the Court of Common Pleas of Montgomery County at Docket No. 89–17897.[3] Petition for Declaratory Judgment, November 28,

2. Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. § 1301.701(d).

3. David and Suzanne Richards (Richards) parents and natural guardians of Christopher, a minor, filed a complaint against DiRienzo and the Hospital alleging that DiRienzo was negligent in providing nursing

1989, (Petition). American Casualty alleges at Count I that the American Casualty policy involves only excess insurance for DiRienzo; that Phico provides primary insurance "for liability arising out of any 'medical incident' and that term is defined to include the rendering or failure to render professional services"; that "[t]he Phico's Primary Policy states in its 'other insurance' clause that it provides primary insurance"; that Phico issued another policy to the Hospital providing "excess insurance to any professional employee of the named insured for liability arising out of any 'medical incident'"; that the "American Casualty policy and the Phico Excess Policy provide coverage for DiRienzo in excess of the amounts collectible under the Phico Primary Policy and the Cat Fund"; and that "American Casualty's and Phico's contributions should be apportioned according to the respective limits of liability stated in those policies." Petition, paragraphs 12, 15, 16, 17, 18 and 24.

At Count II American Casualty alleges that DiRienzo is a "health care provider" as defined in Section 103 of the Act, 40 P.S. 1301.103; that pursuant to Section 705(a) of the Act, 40 P.S. § 1301.705(a) "an insurer issuing a professional liability policy on an excess basis is not liable for payment of any claim against a health care provider before the limits of liability of the Cat Fund have been exhausted"; that "the Cat Fund must provide ... the benefits required by the Act up to $1,000,000.00"; and that "only in the event the coverage owed DiRienzo by Phico under its Primary Policy and by the Cat Fund were inadequate ... American Casualty and Phico, under its Excess Policy, would be required to indemnify her as excess co-insurers." Petition, paragraphs 31 and 32. American Casualty seeks declaratory relief on the theory that Phico's primary policy and the Cat Fund must provide coverage with respect to the claims asserted against DiRienzo and that American Casualty's policy provides excess coverage with any contribution apportioned to the limits of its policy.

care and treatment to Suzanne during child birth, and to Christopher. The Richards allege that as a result of DiRienzo's negligence Christopher suffered severe and permanent brain damage.

On April 19, 1991, Phico and DiRienzo moved for summary judgment pursuant to Pa.R.C.P. No. 1035. Phico and DiRienzo contend that the pleadings and the uncontested facts establish that American Casualty's insurance policy does not provide excess coverage but provides primary or co-primary insurance. American Casualty filed a cross-motion for summary judgment alleging that its insurance coverage is in excess of Phico's insurance coverage and that "the responsibility for the sums covered under both the Phico Excess Policy (No. EP 2001) and the American Casualty Policy be prorated in accordance with the limits of those policies...." Answer of American Casualty Company to the Motion for Summary Judgment of Phico Insurance Company.

Also, the Cat Fund filed an application for summary relief seeking a declaration that American Casualty must provide DiRienzo primary coverage and that DiRienzo is not a health care provider as defined in the Act. American Casualty filed a cross-application for summary relief seeking a declaration that DiRienzo qualifies as a health care provider and that the Cat Fund must provide up to a $1,000,000 in coverage to DiRienzo.

Consequently, we must determine the respective obligations of American Casualty, Phico and the Cat Fund to DiRienzo.

## SUMMARY JUDGMENT

Pa.R.C.P. No. 1035(a) provides "[a]fter the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits." In *Geriot v. Council of the Borough of Darby*, 491 Pa. 63, 417 A.2d 1144 (1980), *appeal after remand*, 73 Pa.Commonwealth Ct. 1, 457 A.2d 202 (1983) we reiterated the following standards for entry of a summary judgment:

1) the case must be clear and free from doubt; 2) the moving party must prove that there is no genuine issue of material fact to be tried and that it is entitled to judgment as a matter of law; and 3) the record must be viewed in the light most favorable to the nonmoving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Id.*, 73 Pa.Commonwealth Ct. at 3, 457 A.2d at 203.

 American Casualty's policy contains the following clause:

If you have other insurance which applies to the loss, the other insurance must pay first. It is the intent of this policy to apply to the amount of loss which is more than the limit of liability of the other insurance. We will not pay more than our limit of liability.

American Casualty's policy, Appendix, Exhibit C at 3. Phico's primary policy contains a "pro rata" other insurance clause. It states:

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance. When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision....

Phico's primary policy, Amendment of Other Insurance Condition, Appendix, Exhibit D. It is the position of American Casualty that the policy limit of $1,000,000 is excess insurance and should be prorated with Phico's $10,000,000 excess policy because of the "other insurance" clause. Phico contends that the "other insurance" clause in American Casualty's insurance policy does not convert American Cas-

ualty's liability coverage from primary to excess. Phico maintains that any interpretation that American Casualty's policy provides excess coverage is unreasonable and would result in a windfall for American Casualty. Phico asserts that Phico's excess policy is not triggered until American Casualty's $1,000,000 policy limit is paid out.

In *Aetna Casualty Insurance Co. v. United Services Automobile Association,* 676 F.Supp. 79 (E.D.Pa.1987) Aetna Casualty Insurance Co. (Aetna Casualty) filed a petition seeking a declaratory judgment against United Services Automobile Association (USAA). In *Aetna* a vehicle owned by H.D. Wilkens (Wilkens) and driven by Marguerite Pinney (Pinney) was involved in an accident resulting in injury to John Ewell. At the time of the accident Wilkens had been insured by two Aetna Casualty insurance policies, a personal auto policy covering the vehicle and a "Personal Excess Indemnity Policy." Pinney was a "covered person" under a USAA auto policy. The USAA auto policy contained an "other insurance" clause which stated that the policy was to be treated as excess coverage in the event there existed any other applicable insurance. The Aetna excess policy stated "[t]his insurance is always excess over any other insurance which covers any part of the loss." *Aetna* at 80. USAA argued that " 'Aetna's excess policy and ... [the USAA] policy provide the same coverage to this occurrence; therefore their liability should be prorated.' " *Aetna* at 81. The United States District Court stated:

> [T]he Aetna excess policy is an 'umbrella' policy. It provides the named insured with extended coverage ...; it is labelled 'excess indemnity policy'; and the named insured must maintain underlying primary insurance. Moreover, the policy provides excess coverage to the insured's homeowners, personal liability, recreational vehicle, and watercraft insurance, in addition to his auto insurance.

*Id.* at 81. The United States District Court also stated that Aetna Casualty's excess policy is excess over any "excess provisions arising in regular polices in any manner." *Aet-*

*na,* 676 F.Supp. at 81 quoting *Occidental Fire and Casualty Company v. Brocious,* 772 F.2d 47, 53 (3d Cir.1985) (quoting 8A J. Appleman, Insurance Law and Practice § 4909.85 at 453–54 (1981)). The United States District Court concluded that Aetna Casualty was only responsible for any damages that exceeded the limits of its auto policy and the USAA auto policy.

In the present controversy American Casualty's policy is not titled an excess or umbrella policy and its "other insurance" clause does not refer to underlying insurance. By contrast Phico's excess policy states:

> [A]ll sums which the insured ... shall become legally obligated to pay as damages ... in excess of the greater of: (1) the applicable limits of the insured's underlying Coverage as stated in the Schedule of Underlying coverage (which shall include any catastrophe loss fund applicable to professional liability or other financial mechanisms, whether public or private, established for the purpose of paying awards, judgments or settlements for damages for which the insured is legally responsible) and any other underlying insurance payable with respect to or collectible by the insured.

Phico's excess policy, Appendix, Exhibit E at 9.

Phico's excess policy unambiguously states that the coverage is in excess of all other available coverage including amounts available through the Cat Fund. The American Casualty policy contains no limiting language in the definition or exclusion section and the insuring agreement fails to indicate that the coverage is residual in nature. Therefore, Phico's excess policy is triggered only after the limits of American Casualty's policy and Phico's primary policy are exceeded.

■ In *Blue Anchor Overhall Co. v. Pennsylvania Lumbermens Mutual Insurance Company,* 385 Pa. 394, 123 A.2d 413 (1956) a manufacturer sought recovery under an insurance policy issued by the Pennsylvania Lumbermens Mutual Insurance Company (Pa. Mutual) for damages resulting from leakage from protective fire equipment.

The manufacturer was also insured by "two fire insurance policies of another company", however, "[n]either of these policies covered the risk of leakage from the fire protection equipment." *Blue Anchor*, 385 Pa. at 396, 123 A.2d at 414. Pa. Mutual covered the risk causing the damage but contended that the apportionment clause in the policy limited its liability to the manufacturer. The apportionment clause stated "[i]n the event that the Insured carries other insurance whether concurrent or not, ... this Company *shall not be liable....*" *Id.*, 385 Pa. at 398, 123 A.2d at 415 (emphasis in original). In determining whether the apportionment clause was applicable, the Supreme Court stated that "[t]he authorities are legion that other or double insurance exists only where there are two or more insurance polices covering the same interest, the same subject matter and against the same risk." *Id.*, 385 Pa. at 398, 123 A.2d at 415 (footnote omitted). The Supreme Court concluded that since Pa. Mutual's insurance policy "is the only one which protects against the risk of loss due to leakage from fire protective equipment, it would seem clear that ... [the manufacturer's] other fire insurance policies, being for a different risk, would not constitute other insurance." *Id.*, 385 Pa. at 398, 123 A.2d at 415.

In the present controversy, American Casualty issued a policy to DiRienzo providing liability coverage for general non-business liability and professional liability. The Phico primary policy issued to the Hospital is a detailed "Health Care Providers Comprehensive Liability Policy" which contains five separate coverages for the Hospital and its incidental insureds. The Phico primary policy provides insurance coverage to DiRienzo as an employee of the Hospital under Coverage C "while such person is acting within the scope of his [or her] duties...." Phico's primary policy, Appendix, Exhibit D at 6. The American Casualty policy and the Phico primary policy provide DiRienzo with liability coverage for professional nursing negligence. Therefore, the American Casualty policy and the Phico primary policy are concurrent policies and meet the *Blue Anchor* "same

interest, same subject matter and same risk" test. As a result the "other insurance" clauses in both policies are triggered.

 In *Pacific Indemnity Company v. Linn,* 590 F.Supp. 643 (E.D.Pa.1984) Robert Linn, D.O. (Dr. Linn), an osteopath specializing in nutritional and family medicine, wrote "The Last Chance Diet", a program for a protein-sparing fast diet. "Liability was asserted for malpractice, professional negligence, breach of warranty and/or products liability arising out of the purchase of Dr. Linn's book and/or a dieting protein product called 'Prolinn.'" *Pacific,* 590 F.Supp. at 645. Pacific Indemnity Company (Pacific) agreed to defend Dr. Linn under a reservation of rights. The other insurers refused to defend Dr. Linn.[4] One of the issues resolved by the United States District Court was the extent which the "other insurance" clauses contained in the Pacific and the Pennsylvania Professional Liability Joint Underwriting Association's (JUA) insurance policies limited their liability to Dr. Linn. The Pacific policy provided that "if the insured has other insurance covering the occurrence, any loss shall be distributed on a 'pro rata' basis, *i.e.,* each insurer shall be liable for that portion of the loss which the applicable limits of the single policy bears to the total applicable limits of all valid and collectible insurance" and the JUA policy contained an "excess" other insurance clause which stated that "'[i]f the Insured carries a policy of another insurer against any loss covered by this policy, the Association shall not be liable for any payment hereunder until all payments under such other insurance are exhausted.'" *Id.* at 652. The United States District Court determined that Pacific and JUA insured the same interest, subject matter and risk and "may be deemed 'other insurance' as to each other." *Id.* at 652. The United States District Court also stated that "[w]here two policies are

---

**4.** The insurers were Aetna Insurance Company, Pennsylvania Professional Liability Catastrophe Loss Fund, Pennsylvania Professional Liability Joint Underwriting Association, Chicago Insurance Company, Interstate Fire and Casualty Company and Nationwide Mutual Fire Insurance Company.

concurrently effective and one contains an 'excess' clause and the other a 'pro rata' clause, the 'excess' clause will be given full effect and the 'pro rata' clause will be disregarded" and "[t]herefore, unless and until the Pacific policy limits have been reached, JUA is not obligated to pay." *Id.* at 653 (citation omitted). On appeal the United States Court of Appeals for the Third Circuit determined that the district court did not err in its interpretation and application of the "other insurance" provisions in Pacific and JUA's policies. *Pacific Indemnity Company v. Linn,* 766 F.2d 754 (3d Cir.1985). Under the circumstances of the present case the "other insurance" clause contained in the Phico policy is a "pro rata" clause and this means the Phico policy should be treated as providing primary coverage to DiRienzo. Because the American Casualty policy contains an unqualified excess clause it must be interpreted as providing residual primary coverage.

■ As a result Phico's primary policy pays the first $200,000 of indemnity expense. Thereafter Phico's $200,000 policy limit will be exhausted. American Casualty's primary policy as residual primary insurance kicks in for the next $1,000,000, at which time its $1,000,000 policy limit will be exhausted. In addition because the Phico primary policy is DiRienzo's primary liability insurance it is responsible for payment of the defense expenses.

## SUMMARY RELIEF

■ Pa.R.A.P. 1532(b) provides that "[a]t any time after the filing of a petition for review in an appellate or original matter the court may on application enter judgment if the right of the applicant thereto is clear." The Cat Fund requests summary relief alleging that DiRienzo is not a health care provider as defined in Section 701(a) of the Act, 40 P.S. § 1301.701(a); that DiRienzo is not entitled to participate in the Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund as a health care provider; and that American Casualty's policy is one of primary professional liability insurance and does not qualify

as an excess policy within the meaning of Section 705(a) of the Act, 40 P.S. § 1301.705(a).

It is the position of American Casualty that pursuant to Section 103 of the Act, 40 P.S. § 1301.103 a "health care provider" is defined as "an ... employee ... of any ... [hospital] acting in the course and scope of his employment" and that DiRienzo qualifies as a "health care provider." American Casualty also maintains that it provides "excess professional liability insurance" as defined by Section 705(a) of the Act, 40 P.S. § 1301.705(a).

Section 103 of the Act defines "health care provider" as:

[A] primary health center or a person, corporation, facility, institution or other entity licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, an osteopathic physician or surgeon, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center, and except as to section 701(a), an officer, employee or agent of any of them acting in the course and scope of his employment.

40 P.S. § 1301.103. Also, Section 701 of the Act states:

(a) every health care provider as defined in this Act, practicing medicine or podiatry or otherwise providing health care services in the Commonwealth shall insure his professional liability only with an insurer licensed or approved by the Commonwealth of Pennsylvania, or provide proof of self-insurance in accordance with this section.

(1)(i) A health care provider, other than hospitals, who conducts more than 50% of its health care business or practice within the Commonwealth of Pennsylvania shall insure or self-insure his professional liability in the amount of $100,000 per occurrence and $300,000 per annual aggregate, and hospitals located in the Commonwealth shall insure or self-insure their professional liability in the amount of $100,000 per occurrence, and $1,000,-000 per annual aggregate, hereinafter known as 'basic coverage insurance' *and they shall be entitled to participate in the Fund.* In the event that amounts which

shall become payable by the Fund shall exceed the amount of $20,000,000 in any year following calendar year 1980, basic coverage insurance commencing in the ensuing year shall become $150,000 per occurrence and $450,000 per annual aggregate for health care providers other than hospitals for which basic coverage insurance shall become $150,000 per occurrence and $1,000,000 per annual aggregate. (Emphasis added.)

40 P.S. § 1301.701(a) and (a)(1)(i).

In *McCoy v. State Board of Medical Education and Licensure,* 37 Pa.Commonwealth Ct. 530, 391 A.2d 723 (1978) the State Board of Medical Education and Licensure (Board) had suspended the medical license of the petitioner, a practicing physician, for "failing to secure professional liability insurance or to submit an approved self-insurance plan and ... failing to pay the 10 per cent surcharge into the Fund." *McCoy,* 37 Pa.Commonwealth Ct. at 536, 391 A.2d at 726. The petitioner challenged the constitutionality of Section 701(a) of the Act, 40 P.S. § 1301.701(a) arguing among other things that the classification of health care providers listed in Section 701(a) of the Act "has no rational relationship to the avowed purposes of the Act." *Id.,* 37 Pa.Commonwealth Ct. at 542, 391 A.2d at 729. This Court stated:

> Section 103 of the Act defines the health care provider subject to Section 701(a) as a 'physician, an osteopathic physician or surgeon, a podiatrist, hospital [or] nursing home.' The classification thus excludes other state licensees who provide health care services, *such as nurses,* chiropractors and dentists, who are also subject to malpractice claims, but are not subject to the provisions of the Act. (Emphasis added.)

*Id.,* 37 Pa.Commonwealth Ct. at 542, 391 A.2d at 729.[5] We determined that the classification did not treat the petitioner unfairly. "The studies of malpractice legislation nationwide indicates the availability of insurance and increasing cost for insurance was most critical for physicians, hospitals and nursing homes; moreover, studies indicated other

5. In 1985 Section 103 of the Act was amended to include certified nurse-midwives. Act of November 6, 1985, P.L. 311.

health care providers were able to acquire insurance at acceptable rates." *Id.*, 37 Pa.Commonwealth Ct. at 543, 391 A.2d at 729. Clearly, DiRienzo is ineligible to participate in the Cat Fund as a health care provider within the meaning of Section 701(a) of the Act.

■ The Cat Fund next argues that American Casualty's policy is not excess insurance as designated in Section 705 of the Act, 40 P.S. § 1301.705. Specifically the Cat Fund argues that American Casualty's "other insurance" clause does not entitle it to treatment as a true excess or umbrella policy.

Section 705(a) of the Act provides:

No insurer providing excess professional liability insurance to any health care provider eligible for coverage under the Medical Professional Liability Catastrophe Loss Fund shall be liable for payment of any claim against a health care provider for any loss or damages except those in excess of the limits of liability provided by the Medical Professional Liability Catastrophe Loss Fund.

40 P.S. § 1301.705(a). Vis-a-vis the Cat Fund, American Casualty's policy is not excess professional liability insurance because DiRienzo is not a health care provider and American Casualty's "other insurance" clause is not triggered.[6]

■ DiRienzo, however, is entitled to coverage by the Cat Fund by virtue of her employment by the Hospital, a medical care provider. The Cat Fund is responsible for providing excess coverage up to $1,000,000 for any negligence on the part of DiRienzo as an employee of the Hospital but only after the exhaustion of the limits of the two primary policies, Phico's policy limit of $200,000 and American Casualty's policy limit of $1,000,000. Because DiRienzo is not a health care provider, she is not entitled to

6. Because of our determination that DiRienzo is not a health provider and that American Casualty's policy does not provide excess coverage, we need not address the Cat Fund's remaining argument that in order to be eligible to participate in the Cat Fund a surcharge is required to be collected by the primary carrier.

a separate, additional $1,000,000 of Cat Fund coverage in her individual capacity. If judgment in the underlying action is in excess of these policy limits, Phico's excess policy with a policy limit of $10,000,000 is triggered.

Accordingly, summary judgment is entered in favor of Phico and American Casualty's motion for summary judgment is denied. Also, the Cat Fund's application for summary relief is granted and American Casualty's cross-application for summary relief is denied.

## ORDER

AND NOW, this 24th day of January, 1992, Phico Insurance Company's motion for summary judgment is granted. Phico's primary policy pays the first $200,000 of indemnity expense and defense expenses. American Casualty is the residual primary insurer and is obligated to pay the next $1,000,000 of indemnity expenses. The motion for summary judgment filed by the American Casualty Company is denied.

Also, the Pennsylvania Medical Professional Liability Catastrophe Loss Fund's application for summary relief is granted. Sharon DiRienzo is not a health care provider under Section 103 of the Health Care Services Malpractice Act, 40 P.S. § 1301.103 and is not entitled to participate in the fund as a health care provider. Also, American Casualty's policy does not qualify as an excess policy within the meaning of Section 705 of the Health Care Services Malpractice Act, 40 P.S. § 1301.705. The Pennsylvania Medical Professional Liability Catastrophe Loss Fund is responsible for providing excess coverage up to $1,000,000 to Sharon DiRienzo as an employee of Bryn Mawr Hospital after the exhaustion of the Phico's primary policy limit of $200,000 and American Casualty's policy limit of $1,000,000. If judgment in the underlying action is in excess of these policy limits, Phico's excess policy with a policy limit of $10,000,000 is triggered. The application for summary relief filed by American Casualty is denied.