**INSTITUTE FOR SHIPBOARD EDUCATION, Plaintiff–Appellee,**

v.

**CIGNA WORLDWIDE INSURANCE CO., Defendant–Appellant.**

**No. 954, Docket 93–7863.**

United States Court of Appeals, Second Circuit.

Argued Jan. 12, 1994.

Decided April 8, 1994.

---

**416**

Bradford Cooke, New York City (Donald Joseph Cayea, Levitan, Frieland & Cayea, of counsel), for defendant-appellant.

Martin Domb, New York City (Terence Gargan, Elizabeth A. McCoy, Hill, Betts & Nash, of counsel), for plaintiff-appellee.

Before NEWMAN, Chief Judge, WINTER, Circuit Judge, and McCURN, Senior District Judge.*

---

\* The Honorable Neal P. McCurn of the Northern District of New York, sitting by designation.

1. References to pages of the Joint Appendix will be cited as "A" followed by the page number.

2. Originally, the defendants in the Burgbacher action were the University of Pittsburgh, ISE

McCURN, Senior District Judge:

## INTRODUCTION

The Institute for Shipboard Education ("ISE"), on behalf of its insurer Steamship Mutual Underwriting Association (Bermuda) Ltd. ("P & I Club"), commenced this action in the Southern District of New York against Cigna Worldwide Insurance Company ("Cigna") seeking indemnification and contribution for the $1.2 million settlement of an underlying wrongful death action. Upon cross-motions for summary judgment, based upon agreed facts and stipulated exhibits, the district court issued an opinion dated May 4, 1993, *Institute for Shipboard Educ. v. Cigna Worldwide Ins. Co.*, 821 F.Supp. 181 (S.D.N.Y.1993) (hereinafter referred to as "*ISE I*"); a Memorandum–Decision dated July 9, 1993, 1993 WL 267360 (unpublished) (hereinafter referred to as "*ISE II*"); and a July 29, 1993, judgment awarding ISE $1,546,450 in damages. This appeal followed.

## BACKGROUND

The settlement that precipitated the instant action for contribution and indemnification resulted from a civil suit filed in the United States District Court for the Western District of Pennsylvania (Ziegler, J.) (hereinafter referred to as "Burgbacher action" or "Burgbacher") by the parents of Michael Burgbacher who died from an allergic reaction to medication that he was required to take as a condition of his employment with ISE. *See ISE I*, 821 F.Supp. at 184; Joint Appendix at A337.[1] Michael's parents based their suit upon Pennsylvania law; the Jones Act, 46 U.S.C.App. § 688; the Death on the High Seas Act ("DOHSA"), 46 U.S.C.App. §§ 761–767; and general maritime law.[2] Specifically, Burgbacher's parents alleged that the defendants were negligent in employing an incompetent physician, providing decedent with medicine which caused illness, failing to warn of risks of the medication,

(Michael Burgbacher's employer), Dr. Ernest Ainslie (a physician employed by ISE), Sea Wise Foundation (the owner of the ship), and Chee Chen Tung. Subsequently, the University of Pittsburgh and Chee Chen Tung were dismissed by agreement of the parties. *See* A337.

failing to monitor the medication, failing to diagnose the illness, and failing to provide decedent with a safe place to work. *See* A338 (citing Complaint at ¶ 12).

The defendants in the Burgbacher action filed a motion for summary judgment contending that

(1) plaintiffs' exclusive remedy lies under the workmens' compensation laws of California; (2) the decedent was not a seaman and thus the Jones Act is inapplicable; (3) a survival action, if applicable, must be brought under general maritime law, and not the law of Pennsylvania; and (4) decedent's father is a non-dependent parent and should be dismissed as a plaintiff.

*See* A338.

The district court filed a written opinion disposing of this motion on April 18, 1988. With respect to the Jones Act claim, the court noted that the "[p]laintiffs acknowledge that discovery has led to the conclusion that the decedent was not a seaman and they have agreed to dismiss th[is] claim . . . and to dismiss Sea Wise Foundation as a defendant." *See* A340–A341. In addition, the court found that the "[p]laintiffs' remedies are not limited to the workmen's compensation laws of the state of California." *See* A340. Thus, the court held that the plaintiffs could maintain a suit in admiralty for damages under DOHSA and a survival action under the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302. *See* A340, A342.

Subsequent to this decision, the parties entered into settlement negotiations which ultimately resulted in a $1.2 million settlement in favor of Burgbacher's parents. The P & I Club made the entire settlement payment. *See* A11–A12. Thereafter, ISE, on behalf of the P & I Club, commenced the present action seeking contribution and indemnification from Cigna and defense costs.

The parties then cross-moved for summary judgment. The district court began its anal-

ysis of these motions by stating that resolution of the issue of Cigna's liability for the underlying settlement required the court to engage in a two part inquiry.[3] First, the court had to determine "[w]hether Cigna's policy, when read as a whole but viewed in isolation from other insurance policies held by ISE, covers the Burgbacher claim." *ISE I*, 821 F.Supp. at 186–87. Second, if this question were answered in the affirmative, the court then would have to determine "[h]ow that policy stands in relation to the P & I Club policy held by ISE." *Id.* at 187. After analyzing the relevant provisions of the two insurance policies, the court determined, *inter alia*, that "(1) ISE was covered for the Burgbacher settlement under Coverage B of the Cigna policy; (2) Cigna and the P & I Club provided double insurance for the Burgbacher claim; (3) the Cigna policy was primary; [and] (4) ISE properly preserved its claim against Cigna; . . ." *Id.* at 193.

Subsequent to the court's decision in *ISE I*, Cigna filed an application presenting the court with an additional question: "[h]ow did the P & I Club policy stand in relation to a second Cigna policy, which provided umbrella insurance ("the Cigna umbrella policy") to [ISE]?" *ISE II*, 1993 WL 267360, at *1 (A909). In answer to this question, the court found that the "other insurance" clauses in the P & I Club Policy and in the Cigna umbrella policy were mutually repugnant because the intent of each was to be excess to all other insurance policies. *Id.* at *2 (A912–A913). Therefore, the court concluded that the liability for the $200,000 in excess of the $1 million limitation of the primary Cigna policy must be apportioned between the P & I Club and Cigna on an equal share basis.[4] This appeal followed.

### *DISCUSSION*

#### I. Standard of Review

 As we recently reiterated, "[o]n the appeal of a grant of summary judgment, this

---

3. The parties agreed, and the district court concurred, that under New York's choice of law rules the court should apply California law to determine the scope of coverage under the insurance policies and Pennsylvania law to determine the priority of these policies. *ISE I*, 821 F.Supp. at 186.

4. Although this conclusion would result in the P & I Club and Cigna each paying $100,000, the court determined that Cigna should be given credit for its umbrella policy's § 25,000 deductible. *ISE II*, 1993 WL 267360, *2 (A913).

Court must conduct a *de novo* review of the record applying the same standard as did the district court." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994) (citing *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 967 F.2d 742, 746 (2d Cir.1992)). In this regard, summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There can be no genuine issue of fact " 'unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citation omitted)). Moreover, in deciding whether such a genuine issue exists, the court must "[e]xamine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Id.* (citing *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

## II. The Effect of the Settlement

Before reaching the merits of the present dispute, the court must, as a preliminary matter, determine whether Cigna is bound by the $1.2 million settlement despite the fact that it did not participate in the Burgbacher action. ISE asserts that Cigna is so bound because Cigna failed in its duty to defend ISE. *See* ISE's Brief at 20–21. To the contrary, Cigna argues that defense of the Burgbacher action was never tendered to it and, thus, it cannot be bound by the settlement. *See* Cigna's Reply Brief at 10.

In *B & E Convalescent Ctr. v. State Compensation Ins. Fund,* 8 Cal.App.4th 78, 92, 9 Cal.Rptr.2d 894, 902 (Ct.App.1992), the court addressed the issue of whether an insurance company had a duty to defend its insured under the "employer's liability" portion of its policy. The court stated that because the injured employee had

[s]tated valid civil causes of action for injuries arising within the course and scope of her employment, [the insurance company] had a **duty,** under the "employer's liability" portion of the policy **to defend if** (1) there was a potential for coverage or (2) [the employer/insured] had a reasonable expectation of coverage in light of the nature and kind of risks covered by the policy.

*Id.* (citing *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 274–75, [54 Cal.Rptr. 104, 110–11, 419 P.2d 168, 174–75] (1966)) (emphasis added).

The court then explained that

[a] **potential for coverage would exist if,** based on the allegations of [the employee's] complaint, together with any other information available to [the insurance company], there was a **possibility of coverage under the policy's insuring language which was not excluded by any express provision within the policy** ... This is a question which is not judged on the basis of hindsight but, rather, from all of the information available to the insurer at the time of the tender of the defense.

*Id.* (citation omitted) (footnote omitted) (emphasis added).

■ In the present case, prior to Burgbacher's parents instituting their civil suit, Cigna had paid Burgbacher's father $6,500 pursuant to Coverage A—Workers' Compensation—of its policy. *See* ISE's Brief at 9. Having done so, Cigna apparently believed that this was the extent of its liability under the policy. Based upon the well-settled rule that **generally** workers' compensation is an employee's exclusive remedy against her employer for injuries suffered in the course of employment, we find that, at least at the time the Burgbacher action was commenced, it was reasonable for Cigna to believe that there was no potential for recovery under its policy and that, therefore, it had no duty to defend ISE.

■ This conclusion, however, does not end our inquiry. Once Judge Ziegler determined that Burgbacher's parents' remedies were not limited to California's workers compensation laws and that, therefore, they could maintain a DOHSA claim as well as a

survival action against ISE, it was no longer reasonable for Cigna to believe that it had no duty to defend ISE. Given Judge Ziegler's decision, "a potential for coverage" existed and, therefore, Cigna had a duty to defend ISE. Having wrongfully refused to do so, Cigna cannot now disclaim liability for the resulting settlement. *See Pacific Group v. First State Ins. Co.,* 841 F.Supp. 922, 943 (N.D.Cal.1993) ("[a]n insurer denies coverage at its own risk and, although its action may not have been entirely groundless, it is liable for all of the detriment caused by its breach." (citation omitted)); *Kapelus v. United Title Guaranty Co.,* 15 Cal.App.3d 648, 653, 93 Cal.Rptr. 278, 281 (Ct.App.1971) ("[a]n insurer's wrongful refusal to defend will automatically subject it to liability for both the costs of defense and any adverse judgment the insured suffers, even when the judgment was rendered on a theory not within the policy coverage" (citation omitted)).

Of course, Judge Ziegler's decision in the *Burgbacher* action held only that ISE could be liable for claims beyond workers' compensation. He made no findings, however, on the distinct issue of whether Cigna's policy provided coverage to ISE for these claims. Cigna now asserts that Exclusion (f) of its policy [5] means that if an employee of the insured sustains an injury for which California's workers' compensation statute provides recovery, the insurer will not cover any additional liability that the insured might have to that employee stemming from that same injury.

 The California Supreme Court, however, has explained that the type of policy issued by Cigna "[i]s intended to serve as a 'gap-filler,' providing protection to the employer in those situations where the employee has a right to bring a tort action despite

the provisions of the workers' compensation statute . . ." *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 916, 226 Cal. Rptr. 558, 565, 718 P.2d 920, 927 (1986). Thus, in light of Judge Ziegler's decision that ISE could incur additional liability beyond workers' compensation, ISE reasonably could have expected, despite Exclusion (f), that any such additional liability would be covered by Cigna's policy. Furthermore, because, under California law, all ambiguities are to be resolved against the insurer and exclusions are to be read narrowly, *see Consolidated Am. Ins. Co. v. Mike Soper Marine Servs.,* 951 F.2d 186, 188–89 (9th Cir.1991), we must reject Cigna's attempt to disclaim coverage in this situation. Accordingly, we hold that ISE is entitled to contribution and indemnification from Cigna for its share of the $1.2 million settlement, consistent with the provisions of the respective policies.[6]

## III. The Priority of the Policies

### A. The "Other Insurance" Clauses

The district court stated that "[w]hen an insured has more than one policy covering a claim, the rights and obligations of each insurer depend upon the other insurance clauses of the policies." *ISE I,* 821 F.Supp. at 189. In this regard, the court explained that

[t]here are three general types of "other insurance" clauses—excess, pro rata, and escape. **Excess insurance** "kicks in" to provide additional coverage once the policy limits of other available insurance are exhausted. **Pro rata** provisions allocate financial responsibility between concurrent policies based upon the percentage of coverage each policy bears to the net amount of coverage under all applicable policies. An **escape clause** attempts to release the

---

5. Exclusion (f) excludes liability under coverage B for
 [a]ny obligation for which the insured or any carrier as his insurer may be held liable under the workmen's compensation or occupational disease law of a state . . ., any other workmen's compensation or occupational disease law, any unemployment compensation or disability benefits law, or under any similar law.
 See A307.

6. Cigna's argument that it was never tendered the defense of the Burgbacher action is unper-

suasive. The record clearly indicates that on more than one occasion the P & I Club notified, and requested a response from, Cigna not only concerning the commencement of the Burgbacher action but also the settlement negotiations. *See, e.g.,* A181, A200–A202, A205–A217, A218. For some reason, Cigna chose not to respond. Under such circumstances, it is unreasonable for Cigna to contend that it was never tendered the defense of this action.

insurer from all liability to the insured if other coverage is available.

*Id.* (quoting *Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d 163, 166 (3d Cir.1987) (citing in turn *Insurance Co. of N. Am. v. Continental Casualty Co.,* 575 F.2d 1070, 1072 (3d Cir.1978) (applying Pennsylvania law))) (emphasis added).

 The parties agree that the other insurance clause in the Cigna policy is a pro rata provision.[7] *Id.* They disagree, however, about the proper classification of the P & I Club policy's other insurance clause. ISE argues that this other insurance clause is an excess rather than an escape clause because its intention is to limit liability rather than to provide a complete escape from liability to the insured. *See* ISE Brief at 29. Cigna, on the other hand, asserts that the P & I Club policy's other insurance clause is an escape clause.[8] To support its position, Cigna cites to *Contrans* for the proposition that " '[u]nder Pennsylvania law, an "escape" clause is one that provides that "the company invoking it is relieved from any obligation to the insured if other coverage is available." ' " *ISE I,* 821 F.Supp. at 189 (quoting *Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d 163, 166 (3d Cir.1987) (emphasis in original) (citing in turn *Insurance Co. of N. Am. v. Continental Casualty Co.,* 575 F.2d 1070 [ (3d Cir.1978) ] ) (applying Pennsylvania law))).

In reaching its determination with respect to this issue, the district court looked first to the language of the P & I Club's other insurance clause (hereinafter referred to as "Rule 20") which provides that

[i]f a Member is, apart from the protection or indemnity of the Club, insured, protected or indemnified in any manner whatsoever against any of the liabilities, costs or expenses enumerated in [the sections defining the scope of liability], no contribution shall be made by the Club to such liability, costs or expenses, on the basis of double insurance or otherwise, **to the extent** to which he is so insured or protected or indemnified.

*Id.* (citing Exhibits to Parties' Cross–Motion[s] for Summary Judgment, Ex. 14 at 25) (emphasis added).

Based upon this language, the district court found that Cigna's reliance upon *Contrans* was misplaced. In *Contrans,* the Third Circuit had indicated that " 'given the rigor with which Pennsylvania law treats escape clauses, **we must be careful not to label a limiting clause as an escape clause unless it truly provides a complete escape from liability to the insured.** ' " *Id.* (quoting *Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d at 166) (emphasis added by district court). The district court also found that the "[i]nclusion of the words 'to the extent' in Rule 20 indicates that Rule 20 was not intended to provide 'a complete escape from liability to the insured.' *Id.* The words 'to the extent' are words of limitation, not total escape." *ISE I,* 821 F.Supp. at 189 (quoting *Contrans,* 836 F.2d at 166). Accordingly, the district court concluded that Rule 20 was an excess clause.

 The seminal case in this area is *Grasberger v. Liebert & Obert, Inc.,* 335 Pa. 491, 6 A.2d 925 (1939), which involved the relationship between two insurance policies, one is-

---

7. This clause provides that
 [i]f the insured has other insurance against a loss covered by this policy, the company shall not be liable to the insured hereunder for a greater proportion of such loss than the amount which would have been payable under this policy, had no other such insurance existed, bears to the sum of said amount and the amounts which would have been payable under each other policy applicable to such loss, had each such policy been the only policy so applicable.
 *ISE I,* 821 F.Supp. at 185–86 (citing Exhibits to Parties' Cross–Motion[s] for Summary Judgment, Ex. 19 at 3, ¶ 11).

8. The construction given to the P & I Club's other insurance clause is crucial because it determines the priority of coverage in this case. Under Pennsylvania law, a pro-rata insurer is considered primary to an excess insurer and must pay up to its policy limits. *See Pacific Indem. Co. v. Linn,* 766 F.2d 754, 768 (3d Cir.1985). For public policy reasons, however, Pennsylvania law does not give effect to escape clauses, and thus if the P & I Club's "other insurance" clause is viewed as an escape clause, the P & I Club must share in Cigna's liability. *See Automobile Underwriters, Inc. v. Fireman's Fund Ins. Cos.,* 874 F.2d 188, 191 (3d Cir.1989).

sued by the Threshermen Company ("Threshermen") and the other by Aetna Life Insurance Company ("Aetna"). Both policies contained other insurance clauses. Although the Threshermen policy covered anyone legally responsible for operation of the covered automobile, it further provided that "[i]f any other person ... insured hereunder ... is covered by other valid insurance against a claim otherwise covered by this Policy, no insurance under this policy shall be applicable to such claim." *Grasberger*, 335 Pa. at 494, 6 A.2d at 926 (quoted in *Automobile Underwriters, Inc. v. Fireman's Fund Ins. Cos.*, 874 F.2d 188, 190 (3d Cir. 1989)). Likewise, the Aetna policy provided that "[i]f the named Assured is covered under a policy taken out by the owner or operator of any automobile ... the coverage under this endorsement shall be excess coverage over and above the valid and collectible insurance under the policy taken out by the owner or operator of such automobiles." *Id.* 335 Pa. at 495, 6 A.2d at 926 (quoted in *Automobile Underwriters*, 874 F.2d at 190).

After reviewing both of these clauses, the Pennsylvania Supreme Court concluded that the one contained in the Aetna policy was an excess clause. In addition, it held that the clause in the Threshermen policy that withheld protection if other coverage existed was not applicable because "[u]p to the amount of the coverage of the [Threshermen] policy, [the insured] is not covered by other insurance." *Id.* (quoted in *Automobile Underwriters*, 874 F.2d at 190). Based upon this conclusion, the *Grasberger* court held that the Threshermen Company could not recover any part of the money it had paid to the plaintiff. *Id.* 6 A.2d at 926. Although the *Grasberger* court did not use the term "escape" clause in reference to the provision contained in the Threshermen policy, subsequent courts have done so.[9]

Cigna cites two cases to support its position that the other insurance clause in the P & I Club policy is an escape clause similar to the one contained in the Threshermen policy. Rather than supporting Cigna's position, however, these cases demonstrate why Rule 20 must be classified as an excess clause. The first of these, *Insurance Co. of N. Am. v. Continental Casualty Co.*, 575 F.2d 1070 (3d Cir.1978) ("*INA*"), involved two insurance policies: an umbrella policy with a limit of $2 million issued by Continental Casualty Company ("Continental") and a blanket liability insurance policy with an $8.5 million limit issued by Insurance Company of North America ("INA").

The INA Policy provided, in pertinent part, that

> [i]f other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the limit of liability hereunder), the **insurance hereunder shall be in excess of, and not contribute with, such other insurance.**

*Id.* at 1071–72 (emphasis added).

The corresponding "other insurance" clause in the Continental policy provided, in pertinent part, that

> [i]f with respect to loss and ultimate net loss covered hereunder, the insured has other insurance, whether on a primary, excess or contingent basis, **there shall be no insurance afforded hereunder** as respects loss and ultimate net loss; **provided,** that **if the limit of liability of this policy is greater than the limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance** in an amount sufficient to give the insured, as respects the layer of coverage afforded by

---

9. In *Automobile Underwriters,* the court stated that "[a]lthough the *Grasberger* Court did not denominate the clause in the Aetna policy as an 'escape' clause, ... later Pennsylvania courts have so characterized it." *Automobile Underwriters,* 874 F.2d at 191 (emphasis added). This reference to "the Aetna policy" appears to be an error. A review of the *Grasberger* decision as well as those cases that have relied upon it reveals that it is the clause that is found to be "inapplicable" because it attempts to relieve the insurer of all liability that is denominated an escape clause. In *Grasberger,* this applies to the clause in the Threshermen policy, not the one in the Aetna policy.

this policy, a total limit of liability equal to the limit of liability afforded by this policy. *Id.* at 1072 (emphasis added).

After reviewing the two clauses at issue, the Third Circuit held that "[t]he INA clause clearly falls into the 'excess' classification, but the same cannot be said for the Continental provision." *Id.* The court proceeded to explain that

> [t]he first part of the Continental language is of the "escape" variety. The company claims to grant no coverage if the insured has other protection. The second part of the clause following "provided," however, is not so draconian. Excess coverage will be provided, says Continental, but only if the limits of its policy are greater than the "other insurance" available, and not otherwise. **As applied to the facts here,** the second part of the clause excludes all coverage because Continental's $2 million limit is not greater than INA's $8.5 million. The Continental clause, therefore, **in the context of the dispute at bar must be labeled "escape."**

*INA,* 575 F.2d at 1072 (footnote omitted) (emphasis added).

As the Third Circuit noted, under Pennsylvania law, the classification of these clauses as "excess" or "escape" is significant. In this regard, the court cited *Grasberger* for the proposition that "[i]n a conflict between an excess and an escape clause the court would refuse to enforce the latter. The net result was that the **whole loss was borne by the company which sought to avoid any responsibility by invoking its escape clause.**" *Id.* at 1073 (emphasis added) (citing *Grasberger v. Liebert & Obert, Inc.,* 335 Pa. 491, 6 A.2d 925 (1939)). Although the court noted that the phrase "by other valid insurance" contained in the *Grasberger* policy was different from the corresponding language in the Continental policy—"other insurance, whether on a primary, excess or contingent basis," (sometimes described as a "super-escape" clause),—it held that the two phrases should not be treated differently. *Id.* at 1073–74. Therefore, because the INA policy was purely excess and the Continental policy contained an escape clause that should not be given effect, the court concluded that Conti-

nental would have to assume the full amount of the loss. *Id.* at 1074.

Relying upon *INA,* Cigna argues that the phrase "no contribution shall be made by the Club to such liability, costs or expenses, on the basis of double insurance or otherwise" contained in Rule 20 is similar to the phrase contained in the *INA* policy which provided that "there shall be no insurance afforded hereunder as respects loss and ultimate net loss." While emphasizing this language, however, Cigna ignores Rule 20's limiting phrase **"to the extent** to which he is so insured or protected or indemnified" which does not have a counterpart in the *INA* policy.

Furthermore, even if we were to consider that part of the *INA* clause that provided coverage if the limits of the policy were greater than the other insurance available as a limiting phrase, the result would be the same. In this regard, it is important to note that the Third Circuit emphasized that the pertinent clause **"as applied to the facts here,** ... excludes all coverage ... [and] therefore, in the **context of the dispute at bar** must be labeled 'escape.'" *INA,* 575 F.2d at 1072 (emphasis added). In *INA,* the **facts** precluded all coverage. In the present case, however, the facts do not, and could never, preclude **all** coverage because there is no limit to the coverage under the P & I Club policy. Therefore, the limit of the P & I Club policy would always be greater than the limit of any other policy. Thus, Rule 20 as applied to the facts in this case does **not** exclude all coverage and, therefore, in the context of this dispute, Rule 20 cannot be classified as an "escape" clause.

The other case upon which Cigna relies is *Automobile Underwriters, Inc. v. Fireman's Fund Ins. Cos.,* 874 F.2d 188 (3d Cir.1989). In that case, Automobile Underwriters provided coverage to its insured pursuant to his personal automobile policy which had a liability limit of $35,000. This policy contained a provision which provided that

> [i]f there is any other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all

applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

*Id.* at 189.

Fireman's Fund Insurance Companies ("Fireman's Fund") provided its insured with a primary policy with a limit of $1 million. This policy provided, in pertinent part, that

[a]nyone else is an insured while using with your permission a covered auto except:

. . . . .

(3) Your garage operations customers. However, if a garage operations customer of yours ...

(a) Has no other available insurance (whether primary, excess or contingent), he or she is an insured only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

(b) Has other available insurance (whether primary, excess or contingent), less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, he or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceeds the limits of his or her other insurance.

*Id.* at 189–90.

The Third Circuit, citing extensively to *Grasberger,* noted that the Pennsylvania Superior Court, following the discussion in *Grasberger,* had concluded that "[i]t appears that the weight of authority instructs us to strike the escape clause or provision and enforce the policies as if the escape provision did not exist." *Id.* at 191 (quoting *Connecticut Indem. Co. v. Cordasco,* 369 Pa.Super. 439, 444, 535 A.2d 631, 634 (Super.Ct.1987)). In addition, the court found that the Fireman's Fund policy went beyond the escape provision in *Grasberger.* "Known as a 'super-escape/reduced limits clause,' .... it provides that the company will not provide coverage when there is any other insurance available except to cover the excess of damages not covered by any other insurance up to the limit of an applicable financial responsibility law." *Id.* (citation omitted). The court noted that it had already considered the effect of *Grasberger* on "super-escape" clauses in *INA.* In that case, the Third Circuit had predicted that Pennsylvania would not make a distinction between a "super-escape" clause and the basic escape clause at issue in *Grasberger. Id.* at 191–92.[10] Based upon this reasoning, the court concluded that the Fireman's Fund policy contained an escape clause that must be stricken, leaving Fireman's Fund's primary policy coverage of $1 million applicable to the claim at issue. *Id.* at 193.

Despite Cigna's assertion to the contrary, *Automobile Underwriters* does not support a finding that Rule 20 is an escape clause. Unlike the clause at issue in *Automobile Underwriters* which relieved Fireman's Fund from **any** obligation to its insured if other coverage were available, Rule 20 does **not** relieve the P & I Club from any obligation to its insured. Rather it provides for payment of that part of the claim that remains unpaid once other coverage is exhausted. Thus, Rule 20 must be considered to be an ordinary "excess" clause.

Cigna's attempt to distinguish *Contrans,* upon which the district court relied to support its determination that Rule 20 was an excess clause, is equally unpersuasive. In that case, the Third Circuit noted that "[u]nder Pennsylvania law, an 'escape' clause is one that provides that 'the company invoking it is relieved from **any** obligation to the insured if other coverage is available.'" *Contrans,* 836 F.2d at 166 (quoting *Insurance Co. of N. Am. v. Continental Casualty Co.,* 575 F.2d at 1072) (emphasis added). Moreover, the court noted that "[g]iven the rigor with which Pennsylvania law treats escape clauses, we must be careful not to label a limiting clause as an escape clause unless it **truly** provides **a complete escape** from liability to the insured." *Id.* (citing *Maryland Casualty Co. v. Horace Mann Ins. Co.,* 551 F.Supp. 907, 910 (W.D.Pa.1982), *aff'd mem,*

---

**10.** The Pennsylvania Superior Court in *Cordasco* bore out this prediction when it expressly adopted the analysis of Pennsylvania law as set forth in *INA.*

720 F.2d 664 (3d Cir.1983) (because no attempt is made to escape liability entirely, court refuses to read clause as an escape clause)).

Endorsement # 19, the clause at issue in *Contrans,* provided that

[t]he insurance coverage to such lessee/renter applies only to the maintenance or use of (1) the automobile so leased/rented and (2) trailers owned by the lessee/renter or for which he is legally liable, but only while attached to the leased/rented automobile, however, such insurance **shall not** apply if there is other coverage applicable to the trailer and available to the lessee/renter.

*Id.* at 166–67 (footnote omitted) (emphasis added).

The district court had held that Endorsement # 19 was an escape clause because the limiting words "shall not apply" contained in subsection (2) referred to coverage on both the tractor and trailer. *See id.* at 167. The Third Circuit disagreed. Instead, the court concluded that

the limiting clause applies only to Old Republic's extension of coverage to the trailer; that Old Republic's primary coverage on the tractor remains intact, and it remains liable to the insured for up to $500,000, the maximum coverage as stated in the policy; that Endorsement # 19 does not eliminate any coverage on the tractor; and that, **a fortiori,** it does not eliminate **all** coverage on the insured, hence Old Republic is not escaping its obligation.

*Contrans,* 836 F.2d at 167 (emphasis added).

Cigna argues that the district court's focus on the language in *Contrans* that cautions against interpreting limiting clauses as escape clauses is misplaced because the Third Circuit in *Automobile Underwriters* specifically rejected the application of *Contrans* to super-escape clauses. *See* Cigna's Brief at 42. In this regard, Cigna asserts that the Third Circuit's rejection of the reasoning in *Contrans* is based upon the basic difference in function between other insurance clauses and limitations clauses in insurance contracts. *See id.* at 39.

The court sees no support in *Automobile Underwriters* for Cigna's assertion. In that case, after discussing its holding in *INA* and the Pennsylvania Superior Court's adoption of its *INA* analysis in *Cordasco,* the Third Circuit noted that "[n]othing in *Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d 163 (3d Cir.1987), to which Fireman's Fund alludes, is contrary." *Automobile Underwriters,* 874 F.2d at 192. It is true that nothing in *Contrans* is contrary to the holdings in *INA* and *Cordasco.* Each of these cases, as well as *Automobile Underwriters* itself, stands for the proposition that an escape clause attempts to **eliminate all coverage** for the insured whereas, to the contrary, an excess clause merely **limits the coverage** provided to the insured. Our reading of *Automobile Underwriters* and its reference to *Contrans* evinces no intent by the Third Circuit to reject the application of *Contrans* to super-escape clauses. To the contrary, the Third Circuit went out of its way to note that in *INA* it had "[p]redicted that Pennsylvania would not make a distinction between a 'super-escape' clause and the basic escape clause at issue in *Grasberger.*" *Id.* at 191–92. Moreover, as the court noted, the decision in *Cordasco* had proven its prediction correct. *See id.* at 192.

Applying the law as set forth in *INA, Contrans,* and *Automobile Underwriters* to the facts of this case, it is clear that Rule 20 is an "excess" clause and not an "escape" clause as Cigna would have us conclude. Rule 20 does not attempt to relieve the P & I Club from **all** obligations to its insured if other coverage is available. Rather, it provides that **to the extent** that other coverage is available it will not pay. As to amounts in excess of the limit of that other coverage, however, Rule 20 evinces no intent to escape liability for the "excess." Accordingly, we hold that Rule 20 is an excess clause. Moreover, having reached this decision, we, likewise, conclude, as did the district court, that because the P & I Club policy contains an excess clause and the Cigna policy contains a pro rata clause, Cigna is obligated under Pennsylvania law to pay to the full limits of its policy, which, in the present case, means that Cigna is obligated to indemnify ISE for the first $1 million of the $1.2 million settle-

ment in the Burgbacher action. *See ISE I,* 821 F.Supp. at 190 (citing *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 768 (3d Cir.1985) (citing in turn *Walters v. Dunlap,* 250 F.Supp. at 81)).

### B. Cigna's Umbrella Policy

After the district court issued its decision holding that the P & I Club policy was excess to Cigna's Employers' Liability policy, Cigna filed an application asking the court to determine the relationship between the P & I Club policy and a second Cigna policy, which provided umbrella insurance ("the Cigna umbrella policy") to ISE. *ISE II,* 1993 WL 267360, at *1 (A909). Cigna sought to limit its liability for the judgment to the $1 million policy limit contained in its Employers' Liability policy on the theory that its umbrella policy was excess to the P & I Club policy. *Id.* 1993 WL 267360, at *1 (A909–A910). To the contrary, ISE asserted that either "(1) the P & I Club policy was excess to the Cigna umbrella policy or, in the alternative, (2) the two policies were excess policies with contradictory provisions and should be declared mutually repugnant, thereby requiring the two insurers to each pay part of the $200,000." *Id.* 1993 WL 267360, at *1 (A910).

The Cigna umbrella policy contains an "other insurance" provision which provides that

> [t]he insurance afforded by this policy shall be **excess insurance over any other valid and collectible insurance** (except when purchased specifically to apply in excess of this insurance) available to the insured, whether or not described in the Schedule of Underlying Insurance Policies, and applicable to any part of ultimate net loss, **whether such other insurance is stated to be primary, contributing, excess or contingent.**

*Id.* (emphasis provided by district court).

The district court held that this language "clearly and unequivocally provided coverage in excess of all other available coverage including ... *excess* ... coverage contained in any other policies, unless such other excess coverage specifically stated that it was in excess of the Cigna umbrella policy." *ISE II,* 1993 WL 267360, at *1 (A910) (emphasis in original) (citing *Lumbermens Mut. Casualty Co. v. Allstate Ins. Co.,* 51 N.Y.2d 651, 654–56, 435 N.Y.S.2d 953, 955–56, 417 N.E.2d 66, 67–68 (1980) (holding that policy which contained clause providing for coverage in excess of "any other valid and collectible insurance available to the insured, whether such other insurance is stated to be primary, contributing, excess or contingent" should only contribute after all other excess insurance policies have been exhausted)). Therefore, the district court concluded that because the P & I Club policy did not specifically state that it was excess to the Cigna umbrella policy, "[t]he Cigna umbrella policy is, without a doubt, intended to be excess to all other policies held by ISE." *Id.* 1993 WL 267360, at *1 (A911).

The district court next reviewed the language of Rule 20. In this regard, the court stated that "[t]he key clause in determining the scope of this limitation provides that if ISE is 'insured ... in any manner whatsoever' then the P & I Club policy is excess to the extent of the other insurance." *Id.* In light of this language, the court found that the "'no contribution' clause indicates an intent that the policy be excess to all other policies." *Id.* Therefore, the court concluded that the P & I Club policy, like the Cigna umbrella policy, was written to be excess to **all** other policies. *ISE II,* 1993 WL 267360, at *1 (A911). Based upon this conclusion, the court found that the other insurance clauses of these two policies were in conflict with each other. *Id.* 1993 WL 267360, at *2 (A912). The court, therefore, determined that these clauses were "mutually repugnant," and that, as a result, liability for the $200,000 must be apportioned between the P & I Club and Cigna on an equal shares basis. *Id.* 1993 WL 267360, at *2 (A912–A913).

Cigna cites two cases applying Pennsylvania law to support its position that all the primary policy coverage available to the insured must be exhausted before an umbrella policy is available to cover a settlement or verdict. In *Occidental Fire & Casualty Co. v. Brocious,* 772 F.2d 47 (3d Cir.1985), the Third Circuit addressed the issue of the availability of coverage under an umbrella

policy in circumstances similar to those present here. It noted first that "umbrella policies are sold at comparatively modest prices to pick up where primary coverages end in order to provide extended protection." *Brocious*, 772 F.2d at 53 (citing 8A J. Appleman, *Insurance Law and Practice* § 4909.85 at 452 (1981)). The court then explained that

[b]ecause such policies are not an attempt by a primary insurer to limit a portion of its risk by labelling it "excess" nor a device to escape responsibility, they are regarded as a "true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses."

*Id.* (quoting 8A J. Appleman, *Insurance Law and Practice* § 4909.85 at 453–54 (footnotes omitted)).

Moreover, the court noted that

[a] number of cases have given effect to the different language of the umbrella policy and its underlying purpose by holding that primary policies or policies with excess clauses **must be exhausted** before the carrier of an umbrella policy is required to pay. They have recognized the residual nature of an umbrella policy.

*Id.* at 54 (emphasis added) (citing *Allstate Ins. Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278, 1283–84 (5th Cir.1971) (describing the umbrella policy's coverage as "unique"); *Aetna Casualty and Surety Co. v. Beane*, 385 So.2d 1087, 1090 (Fla.Dist.Ct. App.1980); *Blanchard v. Rodrigue*, 340 So.2d 1001, 1008–09 (La.Ct.App.1976)) (emphasis added).

Applying this law to the policy before it, the court concluded that "[the other] policies must first be exhausted, on a pro rata basis, before the umbrella policy may be applied to any excess." *Id.*

Likewise, in *Aetna Casualty & Surety Co. v. United Servs. Auto. Ass'n*, 676 F.Supp. 79 (E.D.Pa.1987), the court found that the policy at issue was an umbrella policy because it

[p]rovides the named insured with extended coverage for a low premium; it is labelled "excess indemnity policy"; and the named insured must maintain underlying primary insurance. Moreover, the policy

provides excess coverage to the insured's homeowners, personal liability, recreational vehicle, and watercraft insurance, in addition to his auto insurance. Thus, coverage under the Aetna excess policy is excess over any "excess provisions arising in regular policies in any manner."

*Id.* at 81 (quoting *Brocious*, 772 F.2d at 53).

Applying this law to the present case, we conclude that Cigna's umbrella policy is a true "umbrella" policy while the P & I Club's policy is not. Cigna's policy is entitled "Umbrella Liability Policy;" its premium of $10,-000 for a policy whose limit of liability is $10,000,000 is relatively low; and the insured must maintain underlying primary insurance. *See* A318–A325. The P & I Club policy, on the other hand, is not titled an umbrella policy; and the insured is not required to maintain underlying primary insurance. In fact, if an insured does not have primary insurance, the P & I Club policy will "drop down" and provide coverage. Under such circumstances, Pennsylvania law provides that the true umbrella policy will be triggered only after all other excess policies have been exhausted. *See American Casualty Co. v. Phico Ins. Co.*, 145 Pa.Commw. 184, 191–93, 602 A.2d 904, 907–08 (Commw.Ct.1992). Therefore, we reverse the district court's determination that the liability for the $200,-000 must be apportioned between the P & I Club and Cigna. Rather, we hold that the P & I Club policy must be exhausted before Cigna is responsible for any amount in excess of the $1 million under its umbrella policy. Since the P & I Club policy has no limit, it is, therefore, responsible for the entire $200,000 in excess of the $1 million that Cigna must pay under its primary insurance policy.

## CONCLUSION

To reiterate, we affirm the district court's finding that ISE is entitled to contribution and indemnification from Cigna for the Burgbacher settlement. Furthermore, we agree with the district court that Cigna, as primary insurer, must indemnify ISE for payment of the first $1 million of the $1.2 million settlement. However, we reverse that part of the district court's decision that requires Cigna

and the P & I Club to apportion the liability for the $200,000 in excess of the $1 million that Cigna must pay. Rather, we hold that the P & I Club is responsible for payment of the entire $200,000. Since this latter conclusion alters the amounts owed by the respective parties, we remand the case to the district court to recalculate these figures, including the appropriate interest, and amend the judgment in accordance with this decision.