**Frank DONNELLY, et al., Plaintiffs,**

v.

**FORD MOTOR COMPANY, et al., Defendants.**

**No. CV 97–7405 VVP.**

United States District Court, E.D. New York.

Dec. 30, 1999.

tutes the tort.").

**46**

Edward J. Martz, New York City, for Plaintiffs.

Edward L. Birnbaum, Herzfeld & Rubin P.C., Thacher, Simpson, Thacher & Bartlett, New York City, for Defendants.

### OPINION AND ORDER

POHORELSKY, United States Magistrate Judge.

The defendants in this products liability case move for summary judgment seeking dismissal of all the plaintiffs' claims. The motion attacks the testimony of the plaintiffs' expert Samuel Sero, upon whom the plaintiffs rely to prove that the defendant-manufacturers' ignition switch caused the

plaintiff-motorist's burn injuries. The defendants seek summary judgment on the ground that the expert's testimony must be excluded because it falls short of the standard of admissibility embodied in Rule 702 of the Federal Rules of Evidence, and that without it, plaintiffs are unable, as a matter of law, to establish causation. The case is before the court on consent of the parties. *See* 28 U.S.C. § 636(c)(1). For the reasons stated below, the court concludes that the testimony of the plaintiffs' expert must be excluded, and that the defendants are therefore entitled to summary judgment.

### I.  BACKGROUND AND FACTS

This case arises from a 1994 motor vehicle accident which occurred on Hoffman Lane in Hauppauge, New York when a 1988 Mercury Cougar operated by the plaintiff Frank Donnelly collided with another vehicle. The accident occurred when Donnelly drove out of his lane and crossed the double yellow line into the oncoming traffic lane, resulting in a head-on collision with the vehicle operated by non-party Matthew Kiladitis. Shortly after the accident, Donnelly passed out and remained unconscious for approximately eight days. Eyewitnesses on the scene observed flames from the engine area of Donnelly's vehicle, and smoke inside the passenger compartment underneath the dashboard area.[1] Later, Donnelly testified that he felt heat near his knees just before he passed out. As a result of the fire, Donnelly sustained burns on his legs and stomach.

After the accident, the Donnelly vehicle was stored by the plaintiffs at an auto repair shop for approximately three months. The vehicle was then destroyed. In July of 1996, approximately two years later, Ford issued a recall notice for various models of the Mercury Cougar, includ-

---

**1.** Although the plaintiffs submitted a statement of *uncontested* facts, they did not submit a statement pursuant to Local Civil Rule 56.1(b) setting forth *disputed* facts. Pursuant to Local Civil Rule 56.1(c), all material facts set forth by the movant in its 56.1 statement are deemed admitted unless controverted by the opposing party's Rule 56.1(b) statement.

ing the 1988 model driven by Frank Donnelly at the time of the accident. The recall notice stated, among other things, that *"[o]n a small number of the affected vehicles, a short circuit could develop in the ignition switch that could lead to overheating, smoke, and possibly fire in the steering column area of your vehicle."*

In 1997, Marie Donnelly, as parent and natural guardian of Frank Donnelly, commenced the present suit against Ford Motor Company, and United Technologies Corporation as manufacturer of the ignition switch component parts of some Mercury Cougars, claiming breach of warranty, negligence, strict liability, and loss of services. After the close of discovery, including the exchange of expert disclosures under Rule 26(a)(2) of the Federal Rules of Civil Procedure, the defendants moved for summary judgment. The initial disclosures of the plaintiffs' engineering expert included a two-page report, to which was attached certain documents issued by Ford relating to its recall of the allegedly defective ignition switch. *See* Engineering Report Re: Ford Ignition Switch Fires (Cestari Aff. Ex. 13). In response to the defendants' motion, the plaintiffs supplemented that report by filing the Affidavit & Supplemental Report of Samuel J. Sero, P.E.[2]

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Institute for Shipboard Educ. v. Cigna Worldwide Ins. Co.,* 22 F.3d 414, 418 (2d Cir.1994). The party opposing summary judgment may not rest on its pleadings but must present "significant probative evidence" demonstrating that a genuine dispute of material fact exists and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). No triable issue of fact is present if the evidence in the record is insufficient to support a verdict for the party opposing a motion for summary judgment. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. To demonstrate a genuine issue of material fact and therefore survive summary judgment, a plaintiff must present sufficient evidence for a jury to reasonably find in favor of the plaintiff. *Id.* at 252, 106 S.Ct. 2505. Presenting a mere "scintilla of evidence" is insufficient. *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994); *see Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988).

In determining a summary judgment motion, the court may first need to determine the admissibility of expert testimony. *See Raskin v. Wyatt Company,* 125 F.3d 55, 66 (2d Cir.1997). Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits submitted in support of and in opposition to a summary judgment motion "set forth such facts as would be admissible in evidence." Therefore, "it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment," and "only admissible evidence need be considered by the trial court in ruling on a

---

**2.** As noted during oral argument on this motion, the court permits the plaintiffs to rely on both documents as the report of their expert, and considers both in reaching its decision.

motion for summary judgment." *Raskin,* 125 F.3d at 66. Moreover, in determining the admission and qualification of experts, the district court has broad discretion. *See Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 81 (2d Cir.1997); *Boucher v. United States Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d Cir.1996) (per curiam). Federal Rule 104(a) provides that the proponent must establish admissibility of the expert testimony by a preponderance of the proof. *See* Fed.R.Evid. 104. A trial court's decision to admit or exclude expert testimony is reviewed for abuse of discretion. *General Electric Co. v. Joiner,* 522 U.S. 136, 138–39, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

## B. *Standard for Admissibility under Federal Rule of Evidence 702*

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The Supreme Court has established that under Rule 702 the trial judge is assigned the task of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see FDIC v. Suna Assocs., Inc.,* 80 F.3d 681, 686 (2d Cir. 1996). Rule 702 applies not only to scientific testimony but also to expert testimony based on technical or other specialized knowledge. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999).

The trial judge's gatekeeping responsibility is two-fold. First, the court must determine whether the proffered testimony rests on a reliable foundation—that is,

whether the expert's testimony is "ground[ed] in the methods and procedures of science" and consists of "more than subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786.

*Daubert* set out four non-exclusive factors to aid in the determination of whether an expert's reasoning or methodology is reliable: (1) whether the theory or technique relied on has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation in the case of a particular scientific technique; and (4) whether the theory or method has been generally accepted by the scientific community. *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786. Though the focus in considering these factors must be on principles and methodology and not on conclusions, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997).

The test of reliability is a "flexible" one, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Kumho Tire,* 526 U.S. 137, 119 S.Ct. at 1175 (quoting *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786). In fact, the Supreme Court has recently recognized that in certain cases reliability concerns may focus more upon the expert's personal knowledge or experience than on the *Daubert* factors. *See id.* 526 U.S. 137, 119 S.Ct. at 1175. However, the Court points out that even in these cases, "some of Daubert's questions can help to evaluate the reliability even of experience-based testimony."

*Id.* Whether the *Daubert* factors are pertinent in assessing reliability in a particular case depends on "the nature of the issue, the expert's particular expertise, and the subject of his testimony," *id.*, and thus "a trial court should consider the specific factors identified in Daubert where they are *reasonable* measures of the reliability of expert testimony." *Id.* 526 U.S. 137, 119 S.Ct. at 1176 (emphasis added). Ultimately, it is the role of the trial court as gatekeeper to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of *intellectual rigor* that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. 137, 119 S.Ct. at 1176 (emphasis added). The Supreme Court has made it clear that "whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire,* 526 U.S. 137, 119 S.Ct. at 1176.

The second part of the trial court's gatekeeping task is to determine whether an expert's testimony is "relevant to the task at hand," namely, whether the expert's reasoning or methodology can be properly applied to the facts before the court. *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786; *see Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 81 (2d Cir.1997). In order to determine whether the expert's testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue," Fed.R.Evid. 702, the testimony must not only be reliable but must be relevant in that it "fits" the facts of the case. *Daubert,* 509 U.S. at 591–92, 113 S.Ct. 2786.

C. *Admissibility of the Sero Report under Rule 702*

■ Turning to the case at hand, at issue is the admissibility of the testimony of the plaintiffs' expert, Samuel Sero. The focal point of the court's analysis of the

issue are the initial report issued by Sero to satisfy the requirements of Rule 26(a)(2) (the "Sero Report"), as well as the affidavit and supplemental report Sero prepared in response to the defendants' summary judgment motion (the "Sero Supplemental Report"). In both reports, Sero states, "It is my opinion, based upon my research and fire investigations and within a reasonable degree of engineering certainty, that any fire in a Ford vehicle, in which arson has been eliminated as the cause, that has its origin under the driver side dash and in the area of the steering column can be directly linked to the vehicle ignition switch and system." Sero Report, at 2; Sero Supplemental Report, ¶ 6. The Sero Supplemental Report further states, "My conclusion in this matter, to a reasonable degree of engineering certainty, is that the cause of the vehicle fire was not the collision, but rather the eruption of a long term overheating condition established by the breakdown of a known defective ignition switch in a Ford product." Sero Supplemental Report, ¶ 2.

The court finds that the four ˙*Daubert* factors are an appropriate starting point for assessing the reliability of Sero's opinions above. His expert testimony is based on his training and experience in the field of engineering, and his opinions are asserted to be "within a reasonable degree of engineering certainty." Sero Report, at 2; Sero Supplemental Report, ¶ 6. Engineering is a discipline that is based on scientific principles and theories. *See Kumho,* 526 U.S. 137, 119 S.Ct. at 1175. Thus, in light of the nature of the case and the subject of Sero's testimony, it is proper to subject Sero's opinions to scrutiny under the factors outlined in *Daubert.*

Subjecting Sero's opinions to *Daubert* scrutiny exposes immediately their unreliability, for nothing in his report explains the reasoning or methodology by which he reaches them. Though Sero states that his work and the work of experts upon which he relies "use theories and techniques which can be tested, have been the

subject of peer review or publication, has it [sic] a known or potential rate of error, and has been accepted in our community to a large degree," Sero Supplemental Report, ¶ 2, the defendants are correct in pointing out that Sero does not identify any specific technique or method that he used, and cites no industry standards, surveys or studies upon which he relied. His reasoning and methodology, whatever they may be, therefore cannot be examined at all under the *Daubert* factors to determine their reliability. Certainly one would expect some sort of statistical data and analysis, or comparison studies of ignition switch fires with fires of other origin, to support the broad conclusion that all accidental fires originating on the driver's side of Ford vehicles are the result of ignition switch failures. Alternatively, if statistical data and analysis are unavailable, a detailed explication of the reasoning that has led to such a conclusion is necessary to explain how Sero excluded all other possible explanations for the cause of the fire. Without some explanation of the data, studies, or reasoning Sero employed, his conclusion is simply inadmissible *ipse dixit*. *See Joiner*, 522 U.S. 136, 118 S.Ct. at 519.

In his supplemental report, Sero does provide an explanation for his reasoning, if not his methodology, in rebutting certain points made in the report of the defendants' expert. *See* Sero Supplemental Report, ¶¶ 9–10. That is not a substitute, however, for setting forth the reasoning or methodology by which he formed the opinions in his own reports on which the plaintiffs wish to rely to establish causation. The plaintiffs bear the burden of proof. They cannot satisfy that burden merely by adequately rebutting the conclusions in the defendants' expert report. Nor does such a rebuttal establish the reliability of the plaintiffs' expert's unsupported opinions.

The court of course recognizes that *Daubert* should be applied flexibly, and that the *Daubert* factors are simply illustrative, not exhaustive. *See Kumho Tire*,

526 U.S. 137, 119 S.Ct. at 1173. However, the plaintiffs have not identified any other factors bearing on the reliability of Sero's conclusion. Nor could they, given the absence of an explication of Sero's reasoning or methodology. One cannot assess the reliability of reasoning or methodology that is unexplained. To be sure, Sero's reports offer a detailed explanation for how a fire *may* be caused by the ignition systems installed in Mercury Cougars during the model years in question. That, however, is not the issue in this case. The defendants do not dispute that those ignition systems are capable of causing a fire. What they do dispute is that the ignition system in Donnelly's Cougar caused the fire in this case. On that issue, Sero simply offers conclusions without explaining the reasoning or methodology by which he reaches them, and indeed without any indication that he applied the intellectual rigor the Supreme Court contemplated in *Kumho Tire*.

Even if this court were to find that Sero's proffered testimony is reliable, the court finds that his testimony cannot be properly applied to the facts before the court. In order for expert testimony to "assist the trier of fact to understand the evidence or to determine a fact in issue," Fed.R.Evid. 702, the testimony must not only be reliable but must be relevant in that it "fits" the facts of the case. *See Daubert*, 509 U.S. at 591–93, 113 S.Ct. 2786. The defendants contend that Sero's testimony does not "fit" this case because his opinions assume facts for which there is no evidentiary basis. Specifically, Sero's opinion that the ignition switch caused the fire here rests wholly on the factual premise that the fire had its *origin* under the driver side dash in the area of steering column. Therefore, unless there is adequate evidence to support that factual premise, Sero's testimony is of no assistance in determining whether the ignition switch caused the fire.

The plaintiffs have failed to meet their burden to present facts from which a rea-

sonable jury could determine that the factual premise underlying Sero's opinion is true, *i.e.*, that the fire originated under the driver dash in the area of the steering column. The evidence upon which the plaintiffs wish to rely simply does not afford a basis for allowing a jury to find that the fire *originated* in the area under the driver side dash in the steering column area, as opposed to, for example, underneath the hood in the engine area. In the deposition transcripts and statements presented to the court on this motion, none of the eyewitnesses stated that the fire originated in that area. The two snippets of testimony upon which the plaintiffs rely concerning the presence of heat and smoke in the passenger compartment provide little if any proof as to the origin of the fire. Donnelly's testimony that he felt heat around his knees before he passed out may be proof of the *presence* of fire somewhere in that area; without more, however, it is not proof that the fire *originated* there. Similarly, the mere fact that one of the eyewitnesses, Matthew Kiladitis, saw smoke coming from under the dashboard in the passenger compartment on the driver side is not proof, without more, that the fire originated there, particularly when the same eyewitness also testified that the first place he saw fire was in back of the engine compartment. Kiladitis Dep. (Cestari Aff. Ex. 4), at 11–15. Indeed, all of the eyewitnesses confirmed that the first place flames were seen was in the engine compartment. *See* Pring Dep. (Cestari Aff. Ex. 5),at 14–18; P. Watral Statement (Cestari Aff. Ex. 6); R. Watral Statement (Cestari Aff. Ex. 7).

In his supplemental report, filed after the defendants made their summary judgment motion, the plaintiffs' expert seeks to plug this hole in the plaintiffs' proof by offering the opinion that "The photographs of the subject vehicle's damage, the witness statements and depositions, and the rapidity with which Donnelly was burned following the accident clearly show a fire which started under the dash and along the steering column." Sero Supplemental Report, ¶ 8.a. This opinion, however, suffers from the same defects as the others offered by Sero: it is devoid of any explanation of the reasoning or methodology by which he reaches it. He identifies nothing in the photographs or the witness statements and depositions that support this conclusion, nor does he explain how the rapidity with which Donnelly was burned bears on the issue.[3] Moreover, his conclusion seems to conflict directly with his own earlier report, in which he states that eyewitness accounts and fire burn patterns are the indicators of origin of an ignition switch fire. Sero Report, at 1 ("Eyewitness reports and fire burn patterns become the indicators of origin. Any fire, determined by burn patterns and witness reports, as starting under the dash area around the steering column can usually be accredited to an ignition switch related fire."). Here, no information about fire burn patterns is available,[4] and the eyewitness accounts provide little if any information about the origin of the fire. Thus, in his supplemental report Sero draws a conclusion about the origin of the fire without the information he himself earlier declared was necessary to make such a determination. These shortcomings in his analysis convince the court that, like his other opinions, Sero's opinion on this issue is not reliable.

Therefore, the court concludes that the scintilla of evidence presented by the plaintiffs regarding the factual premise upon which their expert's opinion is based falls well short of what a "fair-minded

3. Indeed, the court questions what Sero means by rapidity since the eyewitnesses all concur that Donnelly remained pinned in the car for a number of minutes after the accident, and none mention when, or for how long, during that period of time Donnelly suffered his burn injuries. Donnelly himself was unconscious.

4. No analysis of fire burn patterns was made at the time of the accident, and the plaintiffs disposed of the automobile long before there was any suggestion that the fire might have been caused by the ignition switch.

**52**

jury" would require to return a verdict for the plaintiff. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). Accordingly, the expert's opinion must be excluded because it does not fit the facts of this case, *see, e.g., Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786, and summary judgment is appropriate. *See Gallo,* 22 F.3d at 1223; *Dister,* 859 F.2d at 1114.

### CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED. In view of the disposition above, the court does not address the spoliation issues raised by the defendants. The Clerk of the Court is directed to enter judgment of dismissal in favor of the defendants.

**SO ORDERED.**